## ZILLAH HYDE, Respondent v. PARLIA C. HONITER, Administrator, Defendant; CHARLES F. COLLINS, Appellant.

**St. Louis Court of Appeals, June 24, 1913.**

1. **EXECUTORS AND ADMINISTRATORS: Notice of Claim: Waiver.** In an action to enforce a claim against the estate of a decedent, where the claimant and the administrator go to trial in the probate court by agreement, the question of service of notice of the claim upon the administrator is waived.

2. **PROBATE COURTS: Conclusiveness of Records.** A recital in the judgment of the probate court, allowing a claim against an estate, that the case came on for trial by agreement of the parties is conclusive upon the Court of Appeals.

3. **DOMESTIC RELATIONS: Services Rendered by One Member of Family for Another: Presumptions.** The law does not imply a promise to pay for services rendered by one member of a family for another member, but the presumption is, prima facie, that such services are rendered gratuitously, so that, before the claimant is entitled to recover, it devolves upon him to prove that there was an agreement to pay for the services, either by direct testimony or by facts and circumstances indicating a mutual understanding and intention to that effect.

4. ————: ————: ————: **Sufficiency of Evidence.** In an action by a granddaughter against the administrator of her grandmother's estate for services rendered in caring for the grandmother, evidence tending to show that plaintiff rendered the services in expectation of being paid for them, and that decedent had, on numerous occasions, declared that she intended or expected plaintiff to be well paid for what she did, *held* sufficient to warrant the jury in finding there was a mutual understanding that the services were to be paid for.

5. **TRIAL PRACTICE: Credibility of Witnesses.** The jury are the sole judges of the weight of the evidence and the credibility of the witnesses.

6. **DOMESTIC RELATIONS: Services Rendered by One Member of Family for Another: Evidence.** In an action by a granddaughter against the administrator of her grandmother's estate for services rendered in taking care of her grandmother, *held* that statements made by the grandmother that plaintiff was to be "paid" for her services showed an intention to compensate her and not to bestow a bounty upon her, and it was immaterial that the payment was to be made out of the estate after the death of the grandmother.

7. **STATUTE OF LIMITATIONS: Action for Services: Running Account.** In an action against an administrator for services rendered in caring for decedent, the fact that plaintiff sought to recover more for the services rendered during the latter part of the period did not affect the character of the account nor start the Statute of Limitations running against the earlier items.

8. **WITNESSES: Husband and Wife: Competency of Wife of Distributee of Estate.** In an action against an administrator, on a disputed claim, a distributee of the estate has such an interest in the cause as to render his wife incompetent as a witness.

9. **DOMESTIC RELATIONS: "Family:" Definition.** A family is a collective body of persons who live in one home, under one head or management.

10. **————: Establishment of Relation: Facts Stated.** On trial of a claim made by a granddaughter against her grandmother's estate for services rendered the grandmother, where it was conceded that the grandmother went to the home of her son-in-law, after the death of plaintiff's mother (plaintiff being then a girl fourteen years old), in pursuance of a promise to look after the children, and remained there until her death, sixteen years later, during which time plaintiff married and was absent for three years, returning to her father's house with her child on her husband's death, and thereafter she and her grandmother continued to live as members of the family until the grandmother's death, the existence of the family relation should have been declared as a matter of law, and hence it was improper to submit that question to the jury.

11. **INSTRUCTIONS: Submitting Question of Law.** A question of law should not be submitted to the jury.

12. **APPELLATE PRACTICE: Erroneous Instructions: Estoppel by Position at Trial.** A party litigant will not be heard to complain of the erroneous submission to the jury of a question that should have been declared as a matter of law, where instructions submitting such question were also given at his request.

13. **DOMESTIC RELATIONS: Services Rendered by One Member of Family for Another: Instructions.** Where, in an action by a granddaughter against the administrator of her grandmother's estate for services rendered in caring for her grandmother, the undisputed facts established the existence of the family relation between plaintiff and her grandmother as a matter of law, it was error to instruct the jury that if they found that plaintiff and decedent were not members of the same family, at

the time the services were rendered, the law implied a promise to pay, for the reason that it permitted a finding that the family relation did not exist, in the face of the undisputed facts to the contrary, and for the further reason that, even though the family relation did not exist, nevertheless the relationship of the parties was such that it was necessary for plaintiff to prove that there was a mutual understanding that the services were to be paid for; and such error was not cured by other instructions given, which required the jury to find that plaintiff intended to charge for her services before she could recover, but did not also require them to find that decedent understood or ought to have understood that compensation was to be made.

14. INSTRUCTIONS: Not Based on Evidence. An instruction which predicates a recovery on a finding of the existence of certain facts, when the undisputed evidence shows the nonexistence of such facts, is erroneous.

15. CONTRACTS: Implied Contracts: Relationship of Parties: Presumptions. Although the family relation does not obtain between a person rendering services and the person for whom they are performed, yet if their relationship is such as to lead a reasonable person to believe that the services are performed gratuitously, it will be presumed that they are not to be paid for, and the burden of overcoming this presumption is cast upon the party asserting the claim.

16. EXECUTORS AND ADMINISTRATORS: Judgment: Execution. A judgment against an administrator on a claim should not order execution to issue.

17. APPELLATE PRACTICE: Correction of Erroneous Judgment. The appellate court will not reverse a judgment against an administrator because it erroneously orders execution to issue thereon, but will correct it.

Appeal from Scotland Circuit Court.—*Hon. C. D. Stewart*, Judge.

REVERSED AND REMANDED.

*H. C. Churchill, E. T. Snyder* and *E. R. McKee* for appellant.

(1) Waiver of notice of presentation of demand was void; was not signed by the administrator, was waived by an attorney, therefore conferred no jurisdiction on the probate court, consequently the circuit court

did not acquire jurisdiction, for which reason cause should be dismissed. Taylor v. George, 159 Mo. App. 160; R. S. 1909, secs. 203, 204, 205, 1761. (2) Judgment of the circuit court is irregular and fatally erroneous, in this: Personal judgment is rendered against the defendant, Parlia Honiter, and execution is ordered issued thereon, for which reason alone, the judgment should be set aside. Woods v. Flanery, 89 Mo. App. 632; Brooks v. Duckworth's Admr., 59 Mo. 48. (3) The first item of plaintiff's account, it being a charge for services from April 1, 1901, to April 1, 1905, was barred by the Statute of Limitations, when the action was commenced. (4) The court erred in excluding the deposition of Margaret Collins, wife of appellant Charles Collins. Harrington v. Evans, 49 Mo. App. 372; Martin v. Nicholls, 54 Mo. App. 594. (5) The court erred in giving instructions Nos. 1, 2, 3, 4, or either of them, requested by plaintiff. Penter v. Roberts, 51 Mo. App. 222; Finnell v. Gooch, 59 Mo. App. 209; Lawrence v. Baily, 84 Mo. App. 107; Rose v. Mayes, 139 Mo. App. 246; Smith v. Myers, 19 Mo. 433-435; Cornell v. Roberts, 79 Mo. 218-221; Johnson v. Johnson, 166 Mo. App. 732; Synder v. Free, 114 Mo. 360-371; Erhart v. Dieterich, 118 Mo. 418-431. (6) The court erred in refusing to give instruction No. 1, requested by defendant, at the close of all the evidence in the cause. Cole v. Waters, 164 Mo. App. 567; Brand v. Ray, 156 Mo. App. 622; Johnson v. Johnson, 166 Mo. App. 732; Hall v. Finch, Admr., 29 Wis. 278; Duffey v. Duffey, 44 Pa. St. 402; Bash v. Bash, 9 Pa. St. 260; Anderson v. Osborne, 114 Pac. (Wash.) 160; Stone v. Troll, 134 Mo. App. 308.

*J. E. Luther* for respondent.

ALLEN, J.—This action was begun in the probate court of Scotland county by plaintiff, respondent here, exhibiting the following demand against the estate of Sarah A. Collins, deceased, to-wit:

"To services rendered in caring for and
     nursing Sarah A. Collins during her
     lifetime beginning on April 1, 1901, and
     continuing for a period of four years to
     April 1, 1905, at two dollars per week,
     including, etc. ........................ $ 416.00
"To services same as above from April 1,
     1905, to April 24, 1910, at three dollars
     per week ........................... 789.00
                                          ———————
                                          $1205.00"

A written waiver of services of notice of the pres-
entation of the claim in the probate court was signed
in the name of the administrator, "By J. M. Jayne, his
attorney." The probate court allowed plaintiff's
claim for the full amount of her demand. Upon appeal
from the probate court, the cause was tried *de novo*
in the circuit court before the court and a jury, result-
ing in a verdict for plaintiff in the sum of $1205.
Judgment was entered accordingly, from which the ap-
pellant, a distributee of the said estate of Sarah A.
Collins, deceased, has appealed to this court.

The plaintiff, Mrs. Zillah Hyde, is a granddaughter
of Sarah A. Collins, deceased. It appears that the de-
ceased had two children, viz.: The appellant, Charles
F. Collins, and Mrs. Mary Honiter, the mother of plain-
tiff. The evidence discloses that in 1894 the Honiter
family, composed of Mr. and Mrs. Honiter and their
three children, of whom this plaintiff was the eldest,
lived upon a farm in Scotland county, and that the
deceased lived with her brother on a farm belonging
to her a short distance from the Honiter farm. During
this year (1894), Mrs. Mary Honiter, plaintiff's mother,
died, and upon her death, her mother, Mrs. Sarah A.
Collins, deceased, came to live with the Honiter family.
There is evidence in the record to the effect that this
was in fulfillment of a promise made to her daughter,
Mrs. Honiter, upon the latter's deathbed, that the

grandmother, Mrs. Collins, would look after Mrs. Honiter's children; and there is some testimony that Mr. Honiter, plaintiff's father, requested the grandmother to come and live at his home. At this time the plaintiff was a girl about fourteen years of age. The grandmother continued to live at the Honiter home, and in the latter part of 1897 plaintiff married one Hyde, going elsewhere to live with her husband. Early in 1901 her husband died, and, on or about the 1st of April of that year, she returned to her father's home, with a child born of the marriage, and continued to reside there until the grandmother's death in 1910. The evidence discloses that the grandmother, Mrs. Sarah A. Collins, remained in this home from the time she entered it in 1894 until here death in 1910, a period of approximately sixteen years.

It appears that in 1896 the grandmother met with an accident by being thrown out of a spring wagon, and both of her wrists were injured. There is evidence that both wrists were broken, but according to other testimony the injuries were not of such a serious character. There is considerable conflict in the testimony with respect to the extent and permanency of these injuries and how far they disabled the deceased. There is testimony that she was deprived of the use of her arms for a short time only, and other testimony that she could not use them for months even to feed herself, and that she never fully recovered from the injuries. In 1906 she fell, injuring her right hip. Her physician testified that the hip was not broken, as some witnesses said, but wrenched, and the sciatic nerve badly injured. At any rate, there is ample testimony that from and after the time of this injury she was crippled and could not get about to any extent without assistance. The physician testified that the limb was thereafter almost useless. There is evidence that from the time plaintiff returned to her father's home the grandmother was feeble and frail, that she was often

sick, and that she always required more or less attention and care; that, after the injury to her hip, she was practically helpless, unable to care for herself and required a great deal of care and assistance, and that for a long time before her death she was confined to her bed, requiring almost constant nursing and attention, and her condition such as to require her clothing and bedding to be changed frequently.

There was much testimony to the effect that, from the time plaintiff returned to her father's home, she cared for and looked after her grandmother, and that after the deceased became practically helpless and from then on until her death, plaintiff nursed her, looked after her personal cleanliness, changed her clothing, bedclothes, etc., and cared for her generally.

Various witnesses testified to the effect that the deceased, Mrs. Collins, frequently said that she expected the plaintiff to be well paid for what the plaintiff did for her. Mrs. Beulah Smith. a sister of plaintiff, testified that the grandmother frequently said to her and the plaintiff that they would be well paid for what they did for her. It seems that this witness had performed such services for the grandmother as the latter required while plaintiff was absent from her father's home after her marriage. The witness married in 1904 and left her father's home. This witness also testified that, after Mrs. Collins' hip was injured, the latter said, in the presence of the witness and plaintiff, that she expected plaintiff to be well paid for what plaintiff did for her; that she had heard her grandmother say this a number of times.

Other witnesses, neighbors, friends, etc., testified to having heard the deceased make like statements, some of them in the presence of the plaintiff, that deceased expected plaintiff to be well paid. The general tenor of this testimony was to the effect that deceased expected the plaintiff to be paid out of the property of deceased after the latter's death. Some of the wit-

nesses stated that such were the declarations of the grandmother, and others that they so understood the statements in question concerning which they testified.

One witness testified that he heard plaintiff say in the presence of deceased that she expected to be paid for what she did for deceased, and there was testimony tending to show that the reasonable value of plaintiff's services were equal to or in excess of the amount claimed therefor.

On behalf of defendant, there was testimony tending to show that, during a considerable portion of the time in question, the grandmother's condition and state of health were not such as to require any great amount of care and attention, and that plaintiff did not render services in the amount or of the value claimed by her.

It appears that the deceased received rents in some form from her farm while she lived at the Honiter home. Just what she received does not appear; though there is evidence that the reasonable rental value of the farm was between two and three hundred dollars per year. She kept a bank account and at her death she had in bank $231, which it seems had been there deposited in 1903.

There was evidence on behalf of the defendant that during the period of time here in question she furnished plaintiff and the latter's child clothing and other necessaries, and that she purchased things for the Honiter home and supplied clothing and necessaries for the other Honiter children. This evidence was introduced by the defense upon the theory that deceased thus paid for what was done for her by plaintiff and others in the Honiter home. This testimony however was in great measure contradicted by Mrs. Smith, plaintiff's sister, who testified that the grandmother did not purchase anything of consequence for her and the plaintiff, but merely gave them some little presents.

I. Appellant makes the point that, inasmuch as there was no service upon the administrator of notice

Hyde v. Honiter.

of the presentation of the demand in the probate court and as it does not appear that the attorney who waived notice thereof for the administrator had any authority so to do, the probate court had no jurisdiction to hear and allow the demand, and that therefore the circuit court could acquire none on appeal. This is urged for the reason that the attorney who signed the waiver of notice nowhere appears as attorney of record in the cause and nothing appears as to his special authority in the premises, and for the further reason, as appellant says, that the record does not show that the administrator appeared either in the probate court or in the circuit court.

This point, however, is not well taken, for the reason that the judgment of the probate court, before us in appellant's abstract, recites that the cause came on for trial in that court "by agreement of the parties." The record entry of the judgment is conclusive upon us so far as concerns this question; and if the parties went to trial by agreement, the question of due service of notice upon the administrator was waived.

II. Appellant interposed a demurrer to the evidence at the close of plaintiff's case and again at the close of all the evidence in the case, and insists that the court should have taken the case from the jury and directed a verdict for the defendant. We are not so persuaded however.

Where the family relation exists, which we should say was clearly shown to exist here, it is well settled that the law implies no promise to pay for services rendered by one member of a family to another; but on the contrary the presumption obtains, prima facie, that such services are rendered gratuitously. This question has been before this court so frequently that we need but to direct attention to some of the more recent cases of the same character as that before us. [See Kingston v. Estate of Roberts, 175 Mo. App. 69; Hartley v. Estate of Hartley, 173 Mo. App. 18, 155 S. W.

1099; Cole v. Fitzgerald, 132 Mo. App. 17, 111 S. W. 678; Fitzpatrick v. Dooley, 112 Mo. App. 165, 86 S. W. 719.]

The presumption that services rendered under such circumstances are rendered gratuitously affects the burden of proof, operating to cast upon the plaintiff the onus of overcoming the presumption. It devolves upon the plaintiff to prove an agreement to pay for such services, either by direct testimony, or by facts and circumstances indicating a mutual understanding and intention to that effect. [See Kingston v. Estate of Roberts, supra.] Here we think there was sufficient evidence to take this question to the jury. There was testimony, not of one witness, but of several, to the effect that the deceased had upon numerous occasions declared that she intended or expected plaintiff to be well paid for what she did; and, on the other hand, there was testimony that plaintiff rendered the services in expectation of being paid for them. This is substantial evidence to take the question to the jury, the latter being the sole judges of its weight and of the credibility of the witnesses.

In this connection learned counsel for appellant earnestly insist that the statements shown to have been made by the deceased with respect to plaintiff's services do not indicate an intention on the part of deceased to become bound, as upon a legally enforceable obligation, to compensate plaintiff for her services, but that such expressions of deceased were indicative of an intention on her part to bestow a bounty, at her death, upon her grandchildren, including the plaintiff. Learned counsel cite numerous cases holding, in effect, that the expression of an intention to bestow a bounty on the one hand and of expectation to receive such bounty on the other, will not suffice; that there must be brought into existence an obligation capable of enforcement in law. [See Brand v. Ray, 156 Mo. App. 622, 137 S. W. 623.]

There can be no doubt as to the correctness of the doctrine relied upon by learned counsel for the appellant in this respect, but in our judgment the principle invoked is without application here. The evidence shows that the deceased expected plaintiff to be *paid* for her services; the statements in question carry with them the idea of *compensation* for services rendered, not of bestowing a mere bounty. On the other hand, there was evidence that plaintiff expected compensation for what she did. This being the case, it cannot matter that the services were not to be paid for until after the death of the deceased, and out of the property left by her, if such was the case. The real question is whether it was the mutual understanding and intention of the parties that plaintiff's services were to be paid for. [See Christenson v. McDermott Estate, 123 Mo. App. 448, 100 S. W. 63; Hartley v. Estate of Hartley, supra.] And we think the evidence touching this question was such as to make it a matter for the consideration of the jury.

In the light of the recent decisions of this court above mentioned, and the authorities referred to in these cases, which we need not here cite, we think the demurrer to the evidence was properly overruled.

III. It is urged that the first item of plaintiff's account, covering a period from April 1, 1901, to April 1, 1905, was barred by the Statute of Limitations. Appellant's theory in this respect is that the account is not a continuing running account, but is composed of two separate and distinct items, for which different prices are charged, and that the first was closed in 1905, at which time the second began to accrue. We need not dwell upon this question, for it is patent that it is a continuous running account for the services rendered by plaintiff during the entire period in question. The fact that plaintiff charges and seeks to recover more for the services rendered during the latter part of the

period, during which time the evidence shows that her services were greater, cannot affect the character of the account as a whole, nor start the Statute of Limitations to running at that point of time from and after which a higher price is claimed for the services thereafter rendered.

IV.    Appellant assigns as error the action of the trial court in excluding the deposition of Mrs. Margaret Collins, wife of appellant, Charles Collins; the deposition having been offered by defendant, and excluded upon objection of plaintiff's counsel thereto, upon the ground that the witness was the wife ''of one of the real defendants'' in the case.

We must rule this assignment of error against the appellant.    The appellant is one of the distributees of the estate sued, being entitled to receive one-half thereof upon distribution.    Though not a party to the action, he is nevertheless directly interested in the outcome of the suit.    In fact, he is to be regarded as one of the real parties in interest, and for this reason our statute gives him the right of appeal, which right he availed himself of in appealing both from the judgment of the probate court and of the circuit court.    His interest is such as to render his wife an incompetent witness in the cause.    [See In re Estate of Imboden, 128 Mo. App. 555, 107 S. W. 400; Swift v. Martin, 19 Mo. App. 488; Jones on Evidence (2d Ed.), sec. 733.]

V.    The court proceeded upon the theory that it was a question of fact for the determination of the jury whether the deceased and plaintiff were members of the same family.    Instruction No. 1, given on behalf of plaintiff, submitted this question to the jury. . Of those given on behalf of defendant, one defined the term ''family,'' and another submitted to the jury the question of the existence of the family relation.    Three instructions offered by defendant were refused as offered, but were given, after being modified by the court so as

to require the jury to find that deceased and plaintiff were members of the same family at the time the services in question were rendered.

A family, in law, is said to be a collective body of persons who live in one home, under one head or management. [See Birch v. Birch, 112 Mo. App. 157, 86 S. W. 1106, and authorities cited; Jarboe v. Jarboe, 106 Mo. App. 459, 79 S. W. 1162.] And so the trial court defined the term by defendant's instruction mentioned above. As is said in the Birch case, supra, the term is sometimes given a more or less expanded or restricted interpretation in construing a statute or an instrument of writing, according to the manner of its use or the purpose to be effectuated, but it seems that here we should look to the ordinary definition thereof. Applying that definition, there would seem to be no doubt that plaintiff and deceased were members of one family. The deceased came to the Honiter home when plaintiff was about fourteen years of age. Some three years or more thereafter plaintiff married and was absent from her father's home for more than three years, returning in 1901. During her absence the family circle was composed of her father, the grandmother, and the two younger children. It was to this family that plaintiff returned with her young child, and here both she and the grandmother continued to live as members thereof until the latter's death some nine years later.

In the Birch case it is said that if the question of the existence of the family relation is in doubt, it should be submitted to the jury under appropriate instructions. But it would seem, in the case before us, that there was no question of fact to be determined by the jury with respect to this question, but that, on the contrary, the undisputed facts showed, as a matter of law, that such relation existed. It may be that the trial court was of the opinion that the fact that deceased owned a farm and a house thereon in which she for-

merly lived, was a circumstance to be taken into consideration on this question. It is true it appears that, upon going to the Honiter home, she did not remove her household goods and furniture from her own house. These things appear to have been practically all removed or disposed of later on however, and at any rate there was nothing in this connection which can be said to have indicated any purpose or intention on her part to return to her former home.

A question of law should not be submitted to the jury. Here we think the court should have instructed the jury upon the law applicable to the facts of the case, predicated upon the existence of the family relation as a matter of law. However, as we have said, defendant requested an instruction defining the term "family" and another submitting this very question to the jury; which instructions were given as offered. Hence defendant doubtless should be held to be bound thereby and not be heard to complain because of the submission of this question.

VI. Instruction No. 3, given on behalf of plaintiff is as follows:

"The court instructs the jury that if you find that Sarah A. Collins, at the time the services were rendered by plaintiff, was not a member of the family of C. A. Honiter, and that the plaintiff rendered the services in nursing and caring for deceased, for which she is making a charge, the law implies a promise to pay for said services at what they were reasonably worth, although you may believe there was no promise or agreement made by deceased to pay for said services, and it is your duty to find for the plaintiff in such sum as in your judgment you find from the greater weight of the evidence said services were reasonably worth not to exceed the sum of twelve hundred and five dollars."

We think that error inheres in this instruction. In the face of the undisputed facts showing the existence

of the family relation, it permits the jury to find that the deceased was not a member of the family of C. A. Honiter; and if they do so find, they are then instructed to return a verdict for plaintiff upon merely finding *that she rendered services* for the deceased.

Although the court correctly defined the term "family," and the evidence showed beyond question that plaintiff and deceased were, in law, members of the same family, nevertheless the jury, being told that they might determine this question otherwise, may have concluded that, in their judgment, the deceased was not a member of the Honiter family—that the latter was composed of C. A. Honiter and his children, the grandmother having a home and farm of her own and not being dependent upon her son-in-law for support. At any rate, they were permitted to find that the family relation did not exist between plaintiff and the deceased, and we cannot say that they did not so find. If they arrived at this conclusion, then, in order to find for plaintiff, it was only necessary, under this instruction, to find that plaintiff rendered the services in question. And herein lies the vice of this instruction. Even as between strangers the mere rendition of services will not in every instance entitle one to compensation therefor. [See Allen's Admx. v. Richmond College, 41 Mo. 302; Lynch v. Bogy, 19 Mo. 170; 40 Cyc. 2806.] "Where a party voluntarily does an act, or renders services, and there was no intention at the time that he should charge therefor, or understanding that the other should pay, he will not be permitted to recover, for that which was intended originally as a gratuity cannot be subsequently turned into a charge." [Allen's Admx. v. Richmond, supra. See also Wagner v. Electric Co., 177 Mo. l. c. 44, 75 S. W. 966; Sidway v. Land, etc., Co., 187 Mo. l. c. 663, 86 S. W. 150; Lawson on Contracts (2 Ed.), sec. 43.]

But we need not dwell upon the rule which would obtain as between strangers, for, in the case at bar,

eliminating the idea of the family relation, nevertheless the relationship and the situation of the parties undoubtedly was such that a different rule must apply than that which obtains between mere strangers. It has been held that where the family relation does not exist, relationship either by consanguinity or affinity alone is not sufficient to raise a presumption that beneficial services rendered and accepted are gratuitous, except where the relationship is that of parent and child. [Curry v. Curry, 114 Pa. St. 367; Smith v. Milligan, 43 Pa. St. 107; 40 Cyc. 2816.] However this may be, our courts have held that even where no ties of kinship exist between the parties, the fact that they stand in any peculiar relation to each other may have a very important bearing upon the presumptions arising in the case and the burden of proof; for whenever the relationship of the parties is such as to lead a reasonable person to believe that the services are performed gratuitously, then the presumption is indulged that they are not to be paid for and the burden is cast upon the party asserting the claim to overcome this presumption. It is said that "this principle is not confined to the family relation, but finds appropriate application as well in all cases where the relations of the parties are sufficient, according to the experience and customs of men, to invoke its influence as a result of reason and natural justice." [Wagner v. Illuminating Co., 141 Mo. App. 55, 121 S. W. 329.] In the case last cited it is said that where a peculiar relation exists between the parties, bringing the case under the principle just alluded to, "it is incumbent upon the plaintiff to show that he performed the services; that he intended to charge for them at the time; and that the defendant either intended at the time to pay for them (in which case, of course, there is an actual contract arising from the mutual intention of the parties), or that the services were of such a character and were performed under such circumstances as to raise the presumption that

the parties intended that they were to be paid for, or at least that the circumstances were such a reasonable man in the same situation of the person who receives and is benefited by the services ought to understand and know that compensation would be expected from them." [See, also, Wagner v. Electric Co., 177 Mo. 44, 75 S. W. 966.]

In the case before us, aside from the family relation itself, when we take into consideration the relationship of grandmother and grandchild, and the circumstances attending the rendition of the services, undoubtedly the parties stood in such relation to each other as to bring the case within the principle to which we have alluded above. It was error, therefore, to tell the jury that if they found that the family relation did not exist, then the law necessarily implied a promise to pay for the services if plaintiff rendered them.

Was the giving of this instruction reversible error? In this connection we have carefully examined and considered all of the instructions given. So far as concerns the necessity of finding that plaintiff intended to charge for her services at the time they were rendered, the jury were so told by two instructions given on behalf of defendant.(one of them given after being modified by the court), and hence, so far as this question is concerned, we should perhaps hold that the error in this respect in plaintiff's instruction No. 3 was cured by the giving of these two instructions for defendant. However, that the plaintiff intended to charge for her services constituted but a part of the issue which should have been submitted by plaintiff's said instruction, for, in order for plaintiff to recover upon the theory upon which that instruction was given, it was necessary for the jury to find that, not only did plaintiff intend to charge for her services, but, at least, that the deceased understood, or under all the facts and circumstances ought to have understood, that compensation was to be made therefor. [See Wagner v.

Electric Co., supra, l. c. 66, 67.] We are therefore clearly of the opinion that the giving of this instruction was reversible error.

VII.   It is also urged that the judgment entered in this case is fatally defective, in that execution is ordered to issue thereupon.   The judgment of course in this respect was improper, as no execution could be awarded against the administrator or the estate.   Were we not otherwise compelled to reverse the judgment, however, we could readily correct it, as was done in Wood v. Flannery, 89 Mo. App. 43.

It is unnecessary to discuss the other assignments of error.   As the judgment must be reversed and the cause remanded for a new trial, we suggest, for the guidance of the lower court, that, upon another trial, the cause be submitted upon appropriate instructions assuming the existence of the family relation as a matter of law, instead of submitting that question to the jury.

The judgment is reversed and the cause remanded. *Reynolds, P. J.,* and *Nortoni, J.,* concur.