FREDERICK MORTIMER WOOD, Respondent, v. ESTATE OF MINNIE R. LEWIS, Deceased, EUGENE B. MING, Administrator, Appellant.

St. Louis Court of Appeals, June 2, 1914.

1. DOMESTIC RELATIONS: Services Rendered: Presumption as to Compensation. Ordinarily, where one person performs services for another at his request, but without any agreement or understanding as to remuneration, the law implies a promise to pay the just and reasonable value thereof; but where services are rendered to each other by members of a family, living as one household, no such implication arises, but, on the contrary, it is presumed that the services are rendered gratuitously, and the party claiming compensation must prove an agreement .to pay for them, either by direct testimony or by facts and circumstances indicating a mutual understanding and intention to that effect.

2. ———: "Family:" Definition. A family is a collective body of persons who live in one home, under one head or management.

3. ———: Determination: Question for Court or Jury. The existence of a family relation is a mixed question of law and fact, and its determination is a question for the court, if the facts are clear and undisputed, but if the facts are in doubt, the question is for the jury.

4. ———: Services Rendered: Presumption as to Compensation: Rebutting Presumption. While the law will not imply a contract to pay for services rendered by one member of a family for another from the mere fact that the services were rendered and accepted, yet a promise to pay may be inferred from facts and circumstances reasonably justifying the inference of an actual agreement or understanding to pay for the services; but in the absence of direct proof of an agreement, it must appear that the party rendering the services intended at the time that he should be compensated and that the party receiving the benefit thereof intended that compensation should be made.

5. CONTRACTS: Implied Contracts: Gratuitous Services. Even as between strangers, the mere rendition of services will not, in every instance, entitle one to compensation therefor, and where one voluntarily does an act or renders services, and there was no intention at the time that he should charge there-

for, or understanding that the other party would pay, he is not entitled to recover.

6. **DOMESTIC RELATIONS:** Services Rendered: Right to Compensation: Sufficiency of Evidence. In a proceeding agains: the estate of a deceased person for board furnished and services rendered for her in nursing her and doing her laundry work, at her special instance and request, the evidence established that claimant and decedent were cousins, and that claimant's father was decedent's guardian; that she and claimant were members of the family of claimant's father for many years, until the marriage of claimant; that, some time thereafter, decedent went to live with claimant's family, she then being about twenty-five years of age, and that she thereafter lived in claimant's home for sixteen years, until her death. During that time, she was treated as a member of the family and performed duties about the place, though she supplied her own clothing and paid for medicine and medical treatment. *Held*, that she and claimant were members of a family, within the rule that services rendered by one member of a family for another are presumed to be gratuitous, and there being no evidence tending to show that claimant furnished the board and rendered the services sued for with the intention on his part of charging therefor, and on her part of paying therefor, the estate was not liable.

Appeal from Franklin Circuit Court.—*Hon. R. A. R. A. Breuer*, Judge.

REVERSED.

*John W. Booth* for appellant.

In the case at bar the family relation appears from plaintiff's evidence, and there is no evidence whatever to overcome the legal presumption that the service rendered by the one to the other member of the family was a gratuitous service. Therefore the court erred in refusing to give to the jury the instruction in nature of a demurrer to the evidence asked by defendant. Mabary v. Mabary, 173 Mo. App. 437; Lambert v. Hodgdon, 172 Mo. App. 24; Brand v. Ray, 156 Mo. App. 622; Cupp v. McCallister, 144 Mo. App. 111; Fitzpatrick v. Dooley, 112 Mo. App. 165; Green v. Buchanan,

129 Mo. App. 297; Sloan v. Dale, 90 Mo. App. 87; Lawrence v. Bailey, 84 Mo. App. 107; Finnell v. Gooch, 59 Mo. App. 209; Bittrick v. Gilmore, 53 Mo. App. 53; Louder v. Hart, 52 Mo. App. 377; Callahan v. Riggins, 43 Mo. App. 130; Lippman v. Tittmann, 31 Mo. App. 69; Woods v. Land, 30 Mo. App. 176; Bircher v. Boemler, 204 Mo. 554; Lillard v. Wilson, 178 Mo. 145; Cowell v. Roberts, 70 Mo. 218; Whaley v. Peak, 49 Mo. 80; Hart v. Hart's Admr., 41 Mo. 441; Morris v. Barnes' Admr., 35 Mo. 412; Guenther v. Birkicht's Admr., 22 Mo. 439; Smith v. Myers, 19 Mo. 433, 15 Am. & Eng. Ency. of Law (2 Ed.), p. 1083.

*James Booth* and *Jesse H. Schaper* for respondent.

The trial court did not err in overruling the demurrer to the evidence asked by defendant at the close of all the evidence in the case. (a) In an action like this for board and lodging furnished and services rendered at the instance and request of defendant's intestate, proof that the board and lodging was furnished and that the services were performed and that she accepted the same made a prima-facie case. The law will, in suc ha case, imply a promise on the part of the intestate to pay the reasonable value of the board and lodging furnished and services rendered. Sprague v. Sea, 152 Mo. 327. (b) The mere fact that plaintiff was a first cousin in and of itself raised no presumption that he was rendering his services and furnishing her board and lodging gratuitously. In such a case it is a question peculiarly within the province of the jury, taking into consideration the nature and degree of the relationship, the circumstances in life of the parties, and other matters which may affect it, whether or not there was an implied contract for compensation. Sprague v. Sea, 152 Mo. 327; Bowman v. Shelton, 158 S. W. 494; Cole v. Fitzgerald, 132 Mo.

App. 17; Lillard v. Wilson, 178 Mo. 145. (c) In cases of this kind, no absolute rule of law can be laid down. Whether there was an implied contract for compensation, or whether it was a mere gratuity, are questions to be determined by the jury upon the evidence, after taking into consideration the circumstances in life of the parties, the degree of relationship, and all the other facts which may affect the case. Whaley's Ex'r v. Peak, 49 Mo. 80; Smith v. Myers, 19 Mo. 433; Guenther v. Birkicht's Admr., 22 Mo. 439; Hart v. Hart, 41 Mo. 441. (d) If it be doubtful under the evidence whether the services were gratuitously rendered, or whether there was an intention on the one side to charge and on the other to pay, the case should be left to the jury to determine from all the facts and circumstances in evidence, whether or not there was an implied contract for compensation. Voerster v. Kunkel, 86 Mo. App. 194; McQueen v. Wilson, 51 Mo. App. 138. (e) And whether the services were intended as a gratuity or not, is a question to be determined by the triers of the facts. Kerr v. Cusenbary, 60 Mo. App. 558; McQueen v. Wilson, 51 Mo. App. 138.

ALLEN, J.—This is an action founded upon the following demand presented to the probate court of Franklin county for allowance against the estate of one Minnie R. Lewis, deceased, by the respondent Wood, viz.:

"For board and lodging furnished and for services rendered by him and Carrie Wood, his wife, for said Minnie R. Lewis, in providing and caring for and in nursing and attending to her and washing her clothes at her special instance and request for the period of ten years beginning August 28, 1901, and ending August 30, 1910; same being during her last illness, and for services rendered in caring for and attending to her remains preparatory to and for her funeral, all of the reasonable value as follows:

Wood v. Lewis.

"For year ending August 28, 1901........$180.00
"For year ending August 28, 1902........ 180.00
"For year ending August 28, 1903........ 180.00
"For year ending August 28, 1904........ 200.00
"For year ending August 28, 1905........ 200.00
"For year ending August 28, 1906........ 250.00
"For year ending August 28, 1907........ 500.00
"For year ending August 28, 1908........ 500.00
"For year ending August 28, 1909........ 500.00
"For year ending August 28, 1910, and for
    August 29 and 30, 1910..............1600.00

    Total ...........................$4290.00

"Sept. 15, 1905. By note executed by said
    claimant to and in favor of said Min-
    nie R. Lewis .....................$ 100.00

    To Balance ..................$4190.00"

A jury trial in the probate court resulted in a verdict for the claimant for $1700, which was thereupon duly allowed and classified as a demand against the estate. Upon the administrator's appeal to the circuit court, and a trial there *de novo,* before the court and a jury, there was a verdict and judgment for the claimant, and the case is here upon the administrator's appeal.

Minnie R. Lewis, deceased, was a cousin of respondent, being the daughter of a sister of respondent's mother, Mrs. David P. Wood. She was born in 1868 or 1869. Her mother died in 1871, and about two years later she was taken to the home of respondent's father, David P. Wood, who resided upon a farm in Franklin county, where she lived for some two or three years. Then her father, Dr. Lewis, having married again, took her to his home and kept her until his death in February, 1879. A few months after his death she was again

taken to the home of respondent's father, who was then appointed her guardian, and continued to reside in the latter's home until September, 1894. Respondent, who it seems was born in 1860, lived in this home—that of his father—until 1901, when, having married two years previously, he moved elsewhere with his wife and a child, and in 1894 was living upon a farm a few miles from his father's place. In September of the latter year, Minnie Lewis came to live with him, and remained in his home until her death in 1910.

It appears that she came to respondent's home because the latter's father, with whom she had been living, had arranged to rent to others the greater portion of his house, and she could not well remain there. It seems that she asked respondent's father to request respondent to come after her, and that respondent thereupon sent a man with a wagon and had her brought, with her trunk, to his home.

Though the deceased had lived in respondent's home from September, 1894, to the time of her death in August, 1910, it will be seen that the account filed as the basis of the demand covers only the period subsequent to August 28, 1900.

The respondent was called by the appellant administrator as a witness, his incompetency being waived. As to what took place at the time that Minnie Lewis came to his home, he testified that he sent for her upon being told that such was her request, and that nothing whatsoever was said as to the terms upon which she was to live with him. He said: "She just come here like all the folks and brought her trunk with her." He stated that no arrangement was ever made as to her paying for board and lodging, and that he never at any time made any demand on her therefor; that though he had been accustomed for about twenty years to "keep a book," relative to "anything that happens about the place," no account was kept against the deceased.

It appears that in 1891 respondent borrowed one hundred dollars from the deceased, giving his note therefor. This money was never repaid, though it appears that respondent offered to repay it to deceased a few years later when the latter was contemplating making a trip to Colorado, thinking that she would need the same, but she would not accept it; and it appears that she thereafter indicated that she did not want the note to be paid. This is the note for which respondent gives credit in the account filed as the basis of the demand.

Respondent's son, Lloyd Wood, who was about twenty-two years of age at the time of the trial, when asked, upon cross-examination, what board his father charged Minnie Lewis, said: "None that I know of." Upon being questioned, upon redirect examination, as to what he knew of his own knowledge as to whether any charge was made deceased for board, he said: "I know there wasn't." Q. "So far as you know?" A. "Yes." He also stated that no account was ever kept against the deceased; and that she had never paid anything for board.

It appears that the deceased was not in robust health for many years, though there is evidence that she helped respondent's wife more or less with the latter's lighter household duties, and that she was quite industrious. There is testimony to the effect that she helped with the sweeping and cleaning of the rooms, would "wait on the table" at times, assisted in getting the children ready for school, and performed other duties of a like character; and that she gave respondent's daughter music lessons. A cousin of respondent and of deceased, a physician, testified that upon one occasion, in 1901, when the deceased had been taken sick while upon a visit in Washington, Missouri, and, as the physician stated, "her symptoms indicated that she might be sick for an indefinite time," the respondent said to him: "I am awful sorry; Minnie is going

to stay up here and I don't know how we will get along without her."

It is said, however, that no special duties were required of the deceased in respondent's home, but, as stated by respondent's son, "she did what she wanted to; she would help around whenever she felt like it." It is said that she was of a very nervous disposition, and would frequently have headaches, and be confined to her room for a time, and would often rise later than the other members of the household. A room was set apart for her and she came and went as she pleased, occasionally making visits to other relatives. She furnished her own clothing, and at such times as she needed medicine, or medical treatment, either paid therefor herself, or received the same as a gratuity from relatives. A year or two before her death, her health became very poor, and some months before she died it was discovered that she was afflicted with tuberculosis. After becoming thus afflicted she required a great deal of care and attention, which was unstintingly bestowed upon her by respondent and his wife, especially by the latter.

The record abounds with evidence showing that the most cordial relations existed between Minnie Lewis and the other members of respondent's family; that she was very fond of respondent and his wife, particularly of the latter; and that they in turn had great affection for her, were always considerate of her welfare and happiness, and devotedly cared for her during her last illness.

Plaintiff's case proceeds upon the theory, as stated by his counsel in the latter's brief before us, "that there was an implied promise of Minnie R. Lewis to pay plaintiff for his services, board and lodging rendered and furnished, and that their relationship did not raise the presumption that he was rendering his services and furnishing board and lodging gratuitously, but that it was a question of fact to be determined

by the jury, taking into consideration the relationship of the parties and their circumstances in life, whether or not there was such implied promise or contract for compensation."

At plaintiff's request the court gave two instructions. One of them told the jury that if they found "from all the facts and circumstances in evidence that the plaintiff at the special instance and request of the deceased did render the services and furnish the board, lodging and washing for deceased as set forth in his said claim, or . . . at the special instance and request of said deceased did render any of the services or furnish any of the board, lodging and washing as set forth in said claim," then the jury should find for plaintiff in such sum as they might believe to be the fair and reasonable value thereof . . . not exceeding the amounts set forth in said claim.

Plaintiff's other instruction told the jury that if they found "from the evidence that the plaintiff did render the services and furnish the board, lodging and washing for the deceased as set forth in his said claim, or that he furnished any of the board, lodging and washing as set forth in his said claim, and that said services were accepted by said deceased, then . . . a contract or obligation to pay will be presumed, but a presumption may arise from the relationship of the parties that the services rendered are acts of gratuitous kindness, and in this case it is a question for the jury, taking into consideration all the circumstances, including the nature of the degree of relationship of the plaintiff to the deceased, Minnie R. Lewis, and their circumstances in life, to determine whether or not there was an implied contract for compensation."

At the close of all the evidence in the case, the defendant offered an instruction in the nature of a demurrer to the evidence, which was refused by the court.

Two instructions were given at defendant's request. One of them withdrew from the consideration of the jury all evidence relating to the services rendered deceased by plaintiff's wife. The other told the jury that unless the evidence satisfied them "that at the time plaintiff was engaged in keeping and caring for Minnie R. Lewis, he intended to exact and received from her on account thereof the reasonable value of such keep and care, the jury must find for the defendant; because as matter of law one who gratuitously renders service of value to another is not lawfully entitled to recover compensation therefor."

One assignment of error is to the overruling of the demurrer to the evidence. Appellant insists that the family relation was here shown to exist, and that therefore the presumption arises that the services were rendered and the board and lodging furnished gratuitously; and that there was no evidence to rebut such presumption so as to authorize the submission of the case to the jury.

It is well settled that the law implies no promise to pay for services rendered by one member of a family to another; but on the contrary the presumption obtains, prima facie, that such services are rendered gratuitously. Ordinarily where one performs services for another, at the latter's request, but without any agreement or understanding as to remuneration, the law implies a promise on the part of the party requesting the services to pay the just and reasonable value thereof; but where the services are rendered to each other by members of a family, living as one household, no such implication will arise from the mere rendition and acceptance of the services. In such cases the law presumes that the services are rendered gratuitously, casting upon the party claiming compensation therefor the burden of rebutting such presumption. In such cases it devolves upon the plaintiff to prove an agreement to pay for such services, either by direct testi-

mony, or by facts and circumstances indicating a mutual understanding and intention to that effect. [See Hyde v. Honiter, 175 Mo. App. 583, 158 S. W. 83; Kingston v. Estate of Roberts, 175 Mo. App. 69, 157 S. W. 1042; Hartley v. Estate of Hartley, 173 Mo. App. 18, 155 S. W. 1099; Crowley v. Dagley, 174 Mo. App. 561, 161 S. W. 366; Cole v. Fitzgerald, 132 Mo. App. 17, 111 S. W. 678; Fitzpatrick v. Dooley, 112 Mo. App. 165, 86 S. W. 719; Brand v. Ray, 156 Mo. App. 622, 137 S. W. 623; Lillard v. Wilson, 178 Mo. l. c. 153, 154, 77 S. W. 74.]

Numerous other cases from our own courts might be referred to in this connection, for claims of this character are quite frequently before the appellate courts of this State, but the foregoing will suffice to indicate the rule which obtains where the family relation exists.

From the instructions given it is to be gathered that the trial court either proceeded upon the theory that the nonexistence of the family relation appeared, as a matter of law, or considered that this was not in itself a factor to be reckoned with in the case; for one instruction authorized a recovery merely upon a finding that the board and lodging were furnished and the services rendered at the request of deceased, while the other told the jury that a contract to pay would be presumed from the acceptance by deceased of such board, lodging and services—qualifying this by saying that a contrary presumption might arise from the "relationship" of the parties, and that on this question the jury should take into consideration the "degree of relationship" of plaintiff to deceased, and their "circumstances in life." But it is quite clear that this view of the case cannot be sustained.

It is necessary to consider whether the existence of the family relation should be said to appear as a matter of law, or that question left to the jury for determination. Unless this can be said to be a matter to

be reckoned with by the jury, we are of the opinion that there was no evidence to justify the submission of plaintiff's case, and that the court should have directed a verdict for the defendant.

A family, in law, is defined to be a collective body of persons who live in one home, under one head or management. [See Hyde v. Honiter, supra; Birch v. Birch, 112 Mo. App. 157, 86 S. W. 1106, and authorities cited; Jarboe v. Jarboe, 106 Mo. App. 459, 79 S. W. 1162.] In Birch v. Birch, supra, it is said that if the existence of the family relation is in doubt, the matter should be submitted to the jury under appropriate instructions. It is said to be a mixed question of law and fact. But in order to justify its submission to the jury, it would appear that the facts touching the existence of such relation should be in doubt. If the facts are clear and undisputed, then undoubtedly it is for the court to determine the matter for itself, for a question of law should not be submitted to the jury. [See Hyde v. Honiter, supra.]

In the present case it appears that the deceased and respondent were members of the household and family of the latter's father for many years. Respondnet's father became the guardian of deceased when she was ten or eleven years old and brought her up in his own family. She became, as it were, a foster sister of respondent, who remained in his father's home until she was a grown young woman. A few years after respondent left this home, the deceased came to live with him, under the circumstances mentioned above. She remained with respondent, as a member of his household, for a period of sixteen years. It is the last ten years of this period that this claim purports to cover. We think it quite clear that, during this latter period, the deceased and respondent must be regarded as being members of the same family. It is quite evident that she was looked upon and treated as a member of the family, though consideration was shown her

with respect to the performance of duties about the place, owing doubtless in large measure to the fact that she was not physically strong, and unable to do more than she did. It is evident, however, that during all of these years she filled a place in the family circle, of which she was a part. That she supplied her own clothing, paid for her medicine and medical treatment, and visited others without asking anyone's permission, made her none the less, a member of the family.

Touching the question of the existence of the family relation the facts appear to be clear and consistent throughout, and it seems that but one reasonable conclusion may be drawn from them. And, as we have said, where the family relation exists, the plaintiff, seeking to establish a claim of this character, must prove the existence of an actual contract to pay for such services. By this, however, is not meant that an *express* contract need be shown, in the proper meaning of that term. Though an actual agreement must appear, it may be established either by direct testimony or inferentially gleaned from the facts. The law will *imply* no contract from the mere rendition of the services and their acceptance, but a promise to pay therefor may be *inferred* from facts and circumstances in evidence, where the latter are such as to reasonably justify the inference that there was an actual agreement that such services were to be paid for or an actual understanding between the parties to that effect. [See Lillard v. Wilson, supra; Fitzpatrick v. Dooley, supra, 1. c. 172, 173; Kingston v. Roberts, supra, and cases cited.] But, in the absence of direct proof going to establish an agreement, there must at least appear facts justifying the inference that there was a mutual understanding and intention that the services were to be paid for. It must appear that the party rendering them intended at the time that he should be compensated therefor, and that the party receiving the benefit thereof intended that such compensation should be made.

In Bircher v. Boemler, 204 Mo. l. c. 563, 103 S. W. 40, it is said that a claim of this character must be based upon an express promise and undertaking to pay therefor. However, as is said in Cole v. Fitzgerald, supra, this must be taken merely to mean that the law will not imply a contract where the family relation exists, and not that the contract itself must be proved by direct testimony. And in Kingston v. Roberts, supra, we pointed out that it is said in Bircher v. Boemler, supra, that "the claim filed should have been based upon a contract either express or implied, but the proof fails to show a contract of either kind."

But in the instant case the record is barren of any evidence tending to prove either directly or inferentially the existence of any contract between the parties. There is nothing whatsoever to indicate any mutual understanding and intention that compensation was to be made respondent for board and lodging furnished or services rendered by him to the deceased. It does not appear that respondent furnished and rendered the same with any intention or expectation at the time that he would receive pay therefor, and it is certain that there is nothing to indicate that the deceased, on her part, understood and intended that she should be obligated on account thereof. Respondent evidently maintained her in his home from motives other and higher than the hope or expectation of pecuniary reward; and she in turn appears to have sought to make herself a helpful member of the household. That the idea of exacting compensation was entirely an afterthought on respondent's part appears from all the facts and circumstances in evidence, and particularly from a letter written by him several months after the death of the deceased.

The case differs materially from that of Hyde v. Honiter, Hartley v. Estate of Hartley, Kingston v. Roberts, supra, and other cases of like character, in which there was evidence going to show an intention on the

part of both parties concerned that the services in question should be paid for, from which a mutual understanding and agreement to that effect might be inferred.  In the case before us, there is a total lack of any such evidence.  As is not usual in cases of this character, the plaintiff testified in his own behalf, his incompetency being waived.  But far from establishing a state of fact raising an inference of a binding obligation on the part of the deceased to pay for that which she received, his testimony indicates very clearly that no such obligation existed.  Upon the whole it is quite clear that plaintiff's evidence was insufficient to justify the submission of his case to the jury, and that the court should have directed a verdict for the defendant; that he wholly failed to carry the burden cast upon him to prove the existence of an actual contract to pay, or facts and circumstances from which the existence thereof might be reasonably inferred.

Learned counsel for respondent insists that under the authority of Sprague v. Sea, 152 Mo. 327, 53 S. W. 1074, and Hart v. Hart's Administrator, 41 Mo. 444, plaintiff made a prima facie case; and that these cases justify the instructions given for plaintiff.  Sprague v. Sea may be distinguished from the case before us, for it does not appear from the opinion that the family relation existed.  At any rate no reference thereto appears.  But whatever may be said of these cases upon which respondent relies, later decisions of our Supreme Court make it altogether clear that the general rule stated above with respect to claims of this character, arising between members of the same family, is fully recognized by that court; and it would serve no useful purpose to enter upon a discussion of the earlier cases. [See Lillard v. Wilson, supra.]

We have considered the case from the standpoint of the existence of the family relation.  By so doing we must not be understood as saying that the case made would otherwise justify a recovery.  As we said in

Hyde v. Honiter, supra: "Even as between strangers the mere rendition of services will not in every instance entitle one to compensation therefor. [See Allen's Adm'x. v. Richmond College, 41 Mo. 302; Lynch v. Bogy, 19 Mo. 170; 40 Cyc. 2806.] 'Where a party voluntarily does an act, or renders services, and there was no intention at the time that he should charge therefor, or understanding that the other should pay, he will not be permitted to recover, for that which was intended originally as a gratuity cannot be subsequently turned into a charge.' [Allen's Adm'x. v. Richmond, supra. See, also, Wagner v. Electric Co., 177 Mo. l. c. 44, 75 S. W. 966; Sidway v. Land, etc., Co., 187 Mo. l. c. 663, 86 S. W. 150; Lawson on Contracts (2 Ed.), Sec. 43.]"

But, of course, if the case stood as between strangers a presumption would come, prima facie, to plaintiff's aid; and we need not consider whether the actual facts adduced in evidence would cause the latter to take flight and altogether disappear from the case. Undoubtedly the case did not stand as one between strangers—regardless of a family relation as such—and it devolved upon plaintiff to show, prima facie, that he intended to charge, and that deceased either intended to pay, or that she understood, or, under all the facts and circumstances, ought to have understood, that compensation was to be made. [See Hyde v. Honiter, supra, and cases there cited.]

But we need not pursue the subject farther. Under the facts revealed in evidence we are compelled to hold that plaintiff failed to make out a case for the consideration of a jury. The judgment must therefore be reversed. It is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.