STELLA E. CLARK WELLS, Plaintiff-Appellant, v. JOHN GOFF, Administrator of the Estate of WILLIAM CLAUDE ALLEN, Deceased, Defendant-Appellant, No. 41908—239 S. W. (2d) 301.

Division Two, May 14, 1951.

*R. P. Smith* for claimant, cross appellant and respondent.

*Parke M. Banta* and *Edgar & Banta* for defendant-appellant John Goff.

[301] BARRETT, C.—This is a demand for services by Stella E. Clark Wells against the estate of William Claude Allen. The services were rendered over a period of twenty years and the demand alleged that their reasonable value was $21,900. The trial court found "the issues" generally for the claimant and allowed her $6500. Both the administrator [302] and the claimant appeal from the $6500 judgment; the administrator because there was an allowance in any sum, and the claimant because she was not allowed, in addition to the $6500, the balance or difference in the total sum claimed, $15,400.

The essential issue, determinative of this cause and of this appeal, is whether a "family relation" existed between Claude and Stella. The claimant alleged that the deceased "greatly relied upon the services and assistance of this claimant in all of his affairs, and promised and intended to compensate and pay this claimant therefor, and promised and intended to make her the owner of an equal half interest in all of his property, businesses and assets, * * *." But, admittedly, there was no express contract regarding compensation, and it is not urged that a "contract implied in fact" is a fair inference from all the circumstances. (For a complete and exhaustive annotation on the subject of recovery for services when a "family relation" exists see 7 A. L. R. (2) 8.) Consequently the claimant is compelled to rely upon the fact that there was no "family relation" and the general rule, applicable between strangers, that a claim for services rendered and voluntarily accepted may be sustained upon proof of the rendition of the services. Patrick v. Crank, (Mo. App.) 110 S. W. (2) 381, 384. If there was a "family relation" Stella tacitly admits that she is not entitled to recover any sum. Kopp v. Traders Gate City Nat. Bank, 357 Mo. 659, 210 S. W. (2) 49; Trantham v. Gullic, (Mo. App.) 201 S. W. (2) 522; Hyde v. Honiter, 175 Mo. App. 583, 158 S. W. 83. In this connection, however, she insists that there was no proof of a family relationship. There were no specific findings of fact or conclusions of law and since the trial court found the issues generally for the claimant it is insisted that the finding is comparable to the finding of a jury that no such relationship existed and that this court is conclusively bound by the trial court's finding of the fact. But this cause was tried by the court without a jury and it is the duty of this court to "review the case upon both the law and the evidence as in suits of an equitable nature"

(Mo. R. S. 1949, Sec. 510.310(4)) and "give such judgment as such court ought to have given, as to the appellate court shall seem agreeable to law." Mo. R. S. 1949, Sec. 512.160. In any event if there is in fact no doubt as to the nature and existence of the relationship it must be so declared. Wood v. Lewis, 183 Mo. App. 553, 564, 167 S. W. 666; Nelson v. Poorman's Estate, (Mo. App.) 215 S. W. 753, 754.

More than twenty years ago now Claude and Stella drove into the Glover community in Iron County. Claude was "peddling candy" from a truck. They rented "a place," including a garage from John Goff. They operated the garage and a combination general store and restaurant. In 1934 Claude bought "a place of his own" near Goff's and Claude and Stella moved. From that time until his death in June, 1949 they operated a sawmill and planer as well as a store, restaurant and garage. It is a fair inference that Claude and Stella had but little, if any, means when they came into the Glover community. After Claude's death his estate inventoried about $18,000.

The nature and extent of Stella's arduous services throughout the twenty years could not be denied, and the neighbors and witnesses familiar with her labors, quite understandably, thought that she was entitled to compensation. She wore greasy overalls and did a man's work. She was a mechanic and overhauled automobiles and trucks. In between times, as occasion demanded, she worked in the store. She labored in the sawmill along with the men, carried lumber to and from the planer, eight and nine hours a day six days a week. All of the witnesses, except Claude's daughter, were men who had no opportunity to observe what went on in the living quarters and there was but little testimony concerning her performance of any household tasks. Claude's daughter disparaged Stella's household services as much as possible. In decribing them she said: "There was no housework done. She probably cooked a pot of beans." As to whether Stella did any housecleaning she said: "Very little. You can go look for yourself. Q. Did she ever wash any dishes? A. Maybe they would set over from one meal to the next and they were washed in sour dish water."

[303] During the first ten or twelve years that Claude and Stella lived in the Glover community it was not known that they were not married. Claude's wife and children lived in an adjoining county, not many miles away, but it was about ten years before they knew that Claude was living in the Glover community. When Claude and Stella moved into the community John Goff said that Claude introduced Stella as his wife. He said, "Yes, she lived there with him" about twenty years. He said that other women "stayed there part of the time." One witness said, "I know she had left him at one time and he went up and said he couldn't get along without her." Some of the witnesses finally heard that Claude and Stella were

not married but some of them who did not hear the rumor and as to whether they were husband and wife said, "No, I didn't know what they was." Some of the witnesses said simply, "They were there together." The living quarters were in rooms to the rear of the store and none of the witnesses, except Claude's daughter, had been in those rooms and they could not say whether Claude and Stella lived together as husband and wife. They were known as "Claude and Stella" and "They stayed around there," or "They were there together, is all I know," or "She always went by Stella Allen is all I know about it." They all emphasized the fact of her manual labor, "He had a lot of old cars and then they worked there. I saw Stella there many a time working on cars." In 1937 and 1938 Claude's daughter, Thelma, and her grandfather stayed with them and Thelma went to school two terms. One school year her younger brother was there. Occasionally Claude's wife "would just go down a day and come back." Thelma had not been there in the past eleven years but when she was there in 1937 and 1938 she said, "They were living just as near a man and wife as I ever seen a man and wife live."

Stella's counsel urge that there was no proof of "illegal and immoral cohabitation of the parties" and therefore there was no "family relation" in the sense of a common law marriage. This action does not concern the rights and remedies in respect of property accumulated by a man and a woman living together in illicit relations. Annotations 75 A. L. R. 732; 120 A. L. R. 475. There was no deception on Claude's part as to his marital status and Stella does not claim that she lived with him under the mistaken belief that they were legally married. Higgins v. Breen, 9 Mo. 497. On the contrary she insists that there was no marital or family relationship whatever. She insists that theirs was a business relationship. Stella's services were not such as members of a family usually and ordinarily render to each other. Annotation 7 A. L. R. (2), l. c. 29, 164. Compare: Trantham v. Gullic, supra; and Farris v. Faris' Estate, (Mo. App.) 212 S. W. (2) 71, 76. But even so their relationship was certainly not comparable to that of the bachelor rancher and his ranch hand in Thomas v. Fitzgerald's Estate, (Mo. App.) 297 S. W. 425. There does not seem to have been that tender affection usually obvious between those living in a family relationship but there was a type of loyalty, regard, mutual respect and devotion not usually observed between those in a strictly business relationship. Farris v. Faris' Estate, supra; annotation 7 A. L. R. (2), l. c. 38. There were no declarations by Claude either as to their status or his intention to compensate her. Kopp v. Traders Gate City Nat. Bank, supra. Stella, apparently, did not have an establishment or home of her own. Wharton v. Denny, 222 Mo. App. 260, 296 S. W. 183. There may have been no illicit cohabitation and they may not have lived together

as husband and wife but it does not follow that there was no family relationship.

But absent some of the elements usually attributed to those living together as husband and wife or in a quasi-marital relationship (9 Cor. L. Q. 246) theirs was indeed an anomalous social relation. However, "even where no ties of kinship exist between the parties, *the fact that they stand in any peculiar relation to each other* may have a very important bearing upon the presumptions arising in the case, and the burden of proof; for whenever the relationship of the parties is such as to lead a reasonable person to believe that the services are performed gratuitously, then the presumption **[304]** is indulged that they are not to be paid for and the burden is cast upon the party asserting the claim to overcome this presumption." Hyde v. Honiter, 175 Mo. App. 583, 598, 158 S. W. 83. Kinship in any degree, or apparent cohabitation, are not necessarily essential to the establishment of a family relation. Brunnert v. Boeckmann's Estate, (Mo. App.) 258 S. W. 768, 770. In their essentials Stella's relationship and claim are fairly comparable to the relationship and claim in Manning v. Driscoll's Estate, (Mo. App.) 174 S. W. (2) 921. There the deceased, a widower, and the claimant, a widow, were old friends. After Mrs. Manning's husband died the deceased asked her "if she would keep house for him." He rented a house and for the next thirteen years she kept house for him. He usually paid the rent, sometimes she did. He bought a restaurant and Mrs. Manning and her son operated it. He called her "Jose" and she called him "Ed." Their friends, in describing the manner in which they lived, said, "their home," or "where they lived," or "when they were living in the Mike Ransford property," and one said, "she took in washing after she and Ed started living together." The court held, as a matter of law, that a family relation existed and in the absence of an express contract or of a contract implied in fact that Mrs. Manning could not recover for her services. The court defined the term "family relation" and said: "In this case while there were no ties of blood kinship between the parties, they had been close friends for many years, and from the time they began to occupy or live in the same home, until the death of Driscoll, absent cohabitation, there was no difference in their home life than prevails in the homes of other families consisting of a husband and wife." The court discussed the terms in which neighbors and others referred to them and said: "No one could read the evidence in this case and come to any other conclusion than that claimant, rather than being a servant working for and expecting a wage, was living as the mistress in a home sometimes rented by her and sometimes by Driscoll, although he furnished the rent money, and the furniture belonged to her, and she did the ordinary household work, while he paid the ex-

penses, and both invited their respective relatives and friends to visit and take meals in their home, and both entertained such visitors, and neither kept any account of either services rendered or expenses paid. The only inference that could be drawn from the evidence is that he and she occupied a platonic relationship for their mutual comfort and convenience." Even though it be assumed that Claude and Stella did not live together as husband and wife, knowing that their relation was meretricious (annotation 7 A. L. R. (2), l. c. 137), they certainly lived together as members of one family, or in a "family relation." Annotation 7 A. L. R. (2), l. c. 36; ·Manning v. Driscoll, supra; Hyde v. Honiter, supra. It necessarily follows that the court erred in allowing Stella any sum for the services claimed in this action.

The judgment against the administrator is reversed and the cause is remanded with directions to enter a judgment in favor of the administrator. *Westhues* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.