In the ESTATE OF Arthur W. ERICKSON, Deceased.

Marguerite RENYER, Respondent,

v.

Arthur D. ERICKSON, Personal Representative of the Estate, Appellant.

No. WD 38160.

Missouri Court of Appeals, Western District.

Dec. 30, 1986.

Daniel M. Czamanske, Hsiang-Lin Lee, Kansas City, for appellant.

Don Witt and Robert H. Shaw of Witt, Boggs, Shaw & Van Amburg, Platte City, for respondent.

Before SHANGLER, P.J., and MANFORD and BERREY, JJ.

MANFORD, Judge.

Personal representative (hereinafter appellant) appeals from the judgment of the Circuit Court of Platte County, Probate Division, which found for plaintiff (hereinafter respondent) on her claim against the estate of Arthur W. Erickson (hereinafter decedent) for personal services rendered to decedent, and for remuneration for expenses incurred on behalf of the estate.

Appellant raises three points on appeal and charges the trial court erred (1) in overruling appellant's objections to testimony by respondent regarding conversations with decedent because said testimony violates § 491.010.2, RSMo Supp.1985, otherwise known as the Dead Man's Statute; (2) in finding respondent was entitled to be compensated for personal services rendered to decedent because there was no substantial evidence to support the judgment; and (3) in finding respondent was entitled to be remunerated for expenses she incurred on behalf of the estate because the trial court erroneously declared and/or applied the law.

The pertinent facts are as follows:

Respondent first met decedent in March of 1976. They started living together on August 15, 1976, and their personal relationship, including sexual relationship, continued over a period of eight years. There were two periods of separation during the eight years, the first being in June of 1978, and the second being in 1981 for a period of six weeks. During this second separation, respondent visited decedent at his home during weekends when she would continue in her rendering of personal services.

The services, for which respondent claimed compensation was due, included various jobs wherein she worked for decedent, to wit: answering the telephone for decedent's business, Artco Metal Doors; working in a convenience store owned by decedent, KCI Kwik Shoppe; remodeling several residences owned by decedent; remodeling and/or installing doors and windows at various businesses and residences which had contracted with decedent; making business trips for decedent regarding rental property decedent managed; and providing bookkeeping services.

Respondent testified that decedent had promised to pay her for her services, and that although she received no compensation during their eight-year relationship, decedent continually recognized and reaffirmed his committment and duty to pay for said services.

Respondent also claimed compensation was due for personal services of a more domestic nature, to wit: cooking, laundering, ironing, housecleaning, clothes mending, mowing, trimming, snow shoveling, errand running, and car washing. Respondent also claimed lost wages for periods when she would be absent from her outside-the-home employment[1] for the purpose of taking decedent to the hospital and staying with decedent to speak with doctors. Respondent calculated time spent performing said services and claimed an hourly rate for each individual job. Respondent testified that she informed decedent on several occasions that she expected to be paid for these services. Respondent also testified that decedent helped with the cooking and cleaned up after himself.

Regarding respondent's claim for expenses incurred on behalf of the estate, respondent testified that for four months following the death of decedent, respondent continued to occupy and maintain the townhome which was owned by respondent and decedent as tenants in common. During the four-month period, respondent paid 100% of the household utilities, mortgage payments, and insurance premiums, and that she had installed new door locks, replacing the previous locks which were broken or defective.

1. During their eight-year relationship, respondent was employed at various establishments outside of the home.

Since upon the death of decedent his undivided half interest passed to the estate, respondent claimed that the expenses so incurred benefitted the estate in that making the mortgage and insurance payments prevented foreclosure, and making utility payments and replacing defective locks generally maintained the premises, and thereby were in the best interest of the estate.

Respondent testified that, although respondent and decedent did not represent themselves as husband and wife, they allowed others who assumed them to be so married to continue in the incorrect assumption.

Witnesses for respondent testified that they had been acquainted with respondent and decedent during their eight-year relationship, and that they had witnessed respondent performing the services for which she claimed compensation, but that they had also seen decedent performing domestic services. These witnesses also testified that they had heard decedent promise to pay respondent, or that it was their (the witnesses') understanding that decedent was to pay respondent. However, it is important to note that in almost every instance where a witness testified regarding decedent's promise to pay respondent, it was in regard to non-domestic services respondent performed. The only instances wherein witnesses stated that they knew respondent was to be paid for *non-domestic* type services occurred as follows:

Q.  Do you know that when Marguerite cooked, that she would turn around to Art, and say "Hey Art, you're going to be paying me for this at the end of the week, or at the end of the month, or at the end of the year? Have you ever heard her tell him that she wanted to paid for her cooking?
A.  No, I don't recall that.
Q.  Did you ever hear Marguerite say that she wanted to be paid for ironing pants or shirts of Art's?
A.  I've heard things said in a joking way. Whether they were serious or not, I don't know.

Q.  Did you hear any serious discussion between her and Art that she expected to be paid, for example, vacuuming the floor?
A.  As far as her sitting down and saying you will pay me for this, and that, no, not just exactly like that.
Q.  Was it your understanding that Marguerite was living with Art because she was to be a housekeeper for him?
A.  It was my understanding, when they were living together, that she was expected to help him do this.

   *     *     *     *     *     *

And then:
Q.  What kind of money did she pay Art when Art did the cooking, do you know, or what kind of expectation did Art ask for if he made the dinner instead of her?
A.  I would think that was totally between them, except for one thing, I don't think, to my knowledge, that Art would ever expect anything from Marguerite.
Q.  But in return, you think Marguerite expected to be paid from Art, even though she didn't sue him during his lifetime, now she's suing him that he's dead?
A.  I really believe so.

The remaining testimony from the witnesses was that they were not aware of any agreement between respondent and decedent concerning compensation for domestic services.

The extent of respondent's total claim is stated as follows:

| Domestic Services | Hours | Rate | Total |
| --- | --- | --- | --- |
| Cooking | 841.5 | $3.04 | $ 2,558.16 |
| Laundry | 306 | $3.04 | $ 930.24 |
| Ironing | 1085 | $3.50 | $ 3,797.50 |
| Cleaning | 1218 | $5.00 | $ 6,090.00 |
| Mending | 10.67 | $3.04 | $ 32.42 |
| Clean Cars | 52.5 | $3.04 | $ 159.60 |
| Mow/Trim | 240 | $4.00 | $ 960.00 |
| Snow Removal | 50 | $4.00 | $ 200.00 |
| Running errands | 20.5 | $3.04 | $ 62.32 |
| Total | | | $14,790.24 |
| Non-Domestic Services : | | | |
| Answering telephone at Artco | 12 | $3.04 | $ 36.48 |
| Kwik Shoppe | 220 | $4.00 | $ 880.00 |

| Remodeling: | | | |
|---|---|---|---|
| McIntyre Heights | 600 | $5.00 | $ 3,000.00 |
| Platte Woods | 62 | $5.00 | $ 310.00 |
| Artco Jobs | 22 | $7.00 | $ 154.00 |
| Poehlman Home | 384 | $5.00 | $ 1,920.00 |
| Trip to Excelsior Springs | 10 | $5.00 | $ 50.00 |
| Total | | | $ 6,350.48 |
| Other services: | | | |
| Staying with decedent at hospital | 59.5 | $7.11 | $ 423.00 |
| Consultation | 8 | $5.00 | $ 40.00 |
| Total | | | $ 463.00 |

The cause was tried to the court which entered judgment for respondent on her claim for services in the amount of $20,-000.00, and for respondent on her claim for remuneration for expenses on behalf of the estate. No findings of fact or conclusions of law were entered. Review of the cause is pursuant to *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

■ For his point (1), appellant charges the trial court erred in overruling appellant's objections to testimony of respondent regarding conversations with decedent because such evidence violates § 491.010.2, RSMo Supp.1985, otherwise known as the Dead Man's Statute.

Section 491.010 reads:

**491.010. Witness's interest does not disqualify-exception-statements of deceased persons and incompetents and other parties to the transaction-abrogation of deadman statute**

1. No person shall be disqualified as a witness in any civil suit or proceeding at law or in equity, by reason of his interest in the event of the same as a party or otherwise, but such interest may be shown for the purpose of affecting his credibility.

2. In any such suit, proceeding or *probate matter, where one of the parties to the contract, transaction, occurrence or cause of action, or his agent in such matter, is dead or is shown to be incompetent, and the adverse party or his agent testifies with respect thereto, then any relevant statement or statements made by the deceased party or agent or by the incompetent prior to his incompetency, shall not be excluded as hearsay* provided that in trials before a jury, the trial judge shall first determine by voir dire examination out of the hearing of the jury that the declarant would have been a competent witness and that his alleged statement or statements would have been admissible in evidence if he were available to testify.

3. The provisions of this section shall apply to all trials commenced after September 28, 1985. (emphasis added)

Clearly, § 491.010 virtually eliminated the disability which heretofore accompanied such testimony.

Appellant misinterprets the statute by assuming he is the "adverse party" referred to in subsection 2. Such assumption is neither logical nor reasonable. That subsection clearly states that when one party to a contract is dead (decedent) and the adverse party (respondent) testifies with respect to any statement of the deceased party to the contract, such testimony will not be excluded as hearsay.

The trial court did not err in admitting the testimony over appellant's objection. Therefore, appellant's point (1) is ruled against him.

For his point (2), appellant charges the judgment for respondent on her claim for services rendered is not supported by substantial evidence.

■ In Missouri, the law has long been established that if two persons live together in the same household concurrently rendering services to each other, and each accepting services from the other, then, in the absence of an *express* contract that payment is to be made in addition to the benefit derived from the arrangement or relationship under which they are living, the law presumes such benefit to be the full recompense to each for the services rendered, and that neither intended to charge or to accept pay for the services he rendered, and the relative pecuniary value of the services rendered by each is not material. *McDaniel v. McDaniel*, 305

S.W.2d 461, 464 (Mo. banc 1957); *Johnston v. Estate of Phillips,* 706 S.W.2d 554, 558 (Mo.App.1986); and *Manning v. Driscoll's Estate,* 174 S.W.2d 921, 924 (Mo.App.1943);

Where a family relationship exists between a person rendering services and the recipient thereof, ... the rule followed in this state is that no promise or agreement that the services are to be paid for is implied from the mere fact that the services have been performed and accepted. Prima facie, the presumption is that such services are rendered gratuitously, casting upon the party claiming compensation therefor the burden of rebutting the presumption. In overcoming the presumption, a claimant must prove either by direct evidence or by evidence from which it may be reasonably inferred that there was an agreement or mutual understanding the claimant was to be remunerated for the services rendered. While mere expressions of gratitude or intended generosity on the part of the recipient are not alone sufficient, a promise to pay may be implied from any facts or circumstances which in their nature reasonably justify the inference of an actual contract of hire or an actual understanding between the parties to that effect. *McDaniel v. McDaniel, supra,* at 464.

The only reasonable inference to be drawn from the evidence is that a "family relationship" existed between respondent and decedent. *See e.g., Wells v. Goff,* 361 Mo. 1188, 239 S.W.2d 301, 303–304 (1951), *Johnston v. Estate of Phillips, supra,* and *Manning v. Driscoll's Estate, supra.* It was therefore incumbent upon respondent to prove by direct evidence or circumstantial evidence that there was an agreement or mutual understanding that she was to be paid for services rendered. In the absence of proof of an express contract, she had to adduce evidence from which the court could infer "an actual contract of hire or an actual understanding between the parties" that she was to be paid.

■ Respondent alleges the existence of an *express* contract between her and decedent, thereby arguing that the above-stated presumption is overcome. However, the record does not support respondent's entire claim.

As noted *supra,* the testimony from witnesses regarding any agreement or understanding between respondent and decedent that respondent would be compensated for services rendered, is only in regard to nondomestic-type services she performed for decedent's businesses, to wit: answering telephone at Artco, remodeling, installing doors and windows for Artco, and working at KCI Kwik Shoppe. The only evidence concerning compensation to respondent for domestic services performed was that respondent once informed decedent that she was not performing such services "free gratis", that respondent jokingly told decedent that she wanted to be paid for ironing, and that one witness "really believe[d]" respondent *expected* to be paid for such services. Such evidence is not sufficient to establish an *express* contract between respondent decedent. Even if it is believed that respondent "expected" to be paid, there must be some evidence that decedent *intended* to pay her. *See Crestwood Plaza, Inc. v. Kroger Co.,* 520 S.W.2d 93, 98 (Mo.App.1974), and *Macy v. Day,* 346 S.W.2d 555, 558 (Mo.App.1961). There was no evidence, either direct or circumstantial, that decedent intended to pay respondent for domestic services rendered.

Nor was there evidence from which the court could infer "an actual contract of hire or an actual understanding between the parties" that respondent was to be paid for domestic services. Respondent's testimony was that she had once told decedent that she was not performing domestic services "free gratis", and that she once jokingly told decedent that she expected to be paid for ironing. Such evidence is not sufficient to infer an agreement between the parties. In fact, the evidence creates an inference that there was no agreement in that (1) respondent continued to render such services for eight years even though she was not paid, (2) respondent did not keep a record of hours spent performing such services

during the eight-year period, and (3) there was no evidence that decedent and respondent agreed upon an hourly rate for each service performed.

■ This court holds that there was substantial evidence to support respondent's claim for non-domestic-type services but that there was no substantial evidence to support respondent's claim for domestic type services. Furthermore, there was absolutely no evidence to support respondent's claims for lost wages incurred while staying with decedent in the hospital, and for a consultation fee.

■ For his point (3), appellant charges the trial court erred in finding respondent was entitled to remuneration for expenses incurred on behalf of the estate because the court erroneously declared and/or applied the law.

The court awarded respondent the total sum of $2,002.17 for expenses incurred in maintaining the townhouse property. As noted *supra*, the estate owns a one-half undivided interest in the property with respondent owning the remaining one-half interest. This court has previously held that expenses incurred by someone other than the personal representative of an estate which benefit the estate as a whole may be reimbursed to that person by the estate. *In re Estate of Murray*, 682 S.W.2d 857, 858 (Mo.App.1984).

There was substantial evidence that the townhouse property was mortgaged and that the mortgage required insurance to be carried on the property, and that the failure to make these payments would likely result in foreclosure. Such result would not be in the best interest of the estate. By making the above payments in full (of which respondent was liable for only one-half) respondent benefitted the estate as a whole.

Furthermore, the expenses incurred by respondent in otherwise maintaining the property also benefitted the estate, as allowing the property to deteriorate would not be in the best interest of the estate.

■ Appellant charges that since respondent has made full and exclusive use of the property during the four months in question, she should be liable for the estate's one-half of the expenses as such half would be equivalent to rent which appellant has never demanded. Appellant cites no authority for this proposition. Since appellant has not demanded rent, he is not now entitled to claim payment of such.

The judgment is hereby affirmed as modified. Respondent is awarded the sum of $2,002.17 for expenses incurred in maintaining the townhouse property. Respondent is awarded the sum of $6,350.48 for non-domestic services. Respondent is to recover the total sum of $8,352.65.

All concur.