Winifred ELLINWOOD,
Appellant-Respondent,

v.

ESTATE OF William LYONS,
Respondent-Appellant.

Nos. 52019, 52366.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 12, 1987.

**24**

Sheehan & Coleman, C. Finn Sheehan, High Ridge, for appellant-respondent.

Stanley D. Schnaare, Hillsboro, for respondent-appellant.

PUDLOWSKI, Presiding Judge.

This appeal follows from the dismissal of claimant Winifred Ellinwood's attempt to reform a deed and subsequent jury trial in which the jury returned a verdict in favor of claimant in the amount of $21,000 for services rendered to the estate of William Lyons.

The facts of this case are not in dispute. Appellant, Winifred Ellinwood, originally filed a one-count petition seeking reformation of a real estate deed. Motion by administrator ad litem to dismiss petition was sustained. The trial court, however, within 30 days after dismissing the petition, designated its order not final for purposes of appeal and on its own motion allowed the petition to be amended. Appellant's amended pleading contained two counts with one count being in reformation of the real estate deed and the second count being in quantum meruit. The first count was dismissed but the second count proceeded to trial before a jury.

The second count of the amended petition sought $30,000 as a fair and reasonable amount for the value of services claimant rendered William Lyons during his lifetime. Prior to trial, the court sustained the administrator ad litem's motion in limine prohibiting the introduction of testimony or evidence as to the value of the property subject to the attempted reformation dis-

missed in Count I. An amended inventory and appraisement subscribed to by claimant on the morning of the trial listed $21,000 as the value of the disputed real estate.

Claimant testified that William Lyons was her cousin whom she first encountered in 1981 when he called because of loneliness and a need to have some kind of contact with people. After the first telephone contact, she and Mr. Lyons met at Jefferson Barracks Cemetery and he showed claimant where he wanted to be buried. They also drove to Mr. Lyons' doctor, his oculist, and the funeral home from where his wife had been buried. On a second occasion claimant and Mr. Lyons met at Jefferson Barracks Cemetery and then went to Calvary Cemetery to locate his parents' gravesite. She testified Mr. Lyons was so grateful that she went with him to the gravesites that he wanted her to have his property when he died. Claimant also took Mr. Lyons to two baseball games.

In the early summer of 1981, claimant arranged for Mr. Lyons and her to go to an attorney's office for the purpose of Mr. Lyons transferring his house to claimant, a subject they had discussed previously. Mr. Lyons did not show up at the attorney's office but at some later date claimant picked up a quit claim deed from the attorney. Claimant testified the property was to be her compensation but admitted Mr. Lyons never told her what he expected from her.

In 1982, claimant attempted to straighten out a bank account, opened a safe deposit box, and obtained a cashier's check from Mr. Lyons. She placed three telephone calls for Mr. Lyons concerning his telephone bill, which went unpaid, and went to the Jefferson County courthouse to obtain a copy of a complaint filed against Mr. Lyons.

In 1983, claimant and her sister took Mr. Lyons shopping three or four times in the course of the year, called the gas company to find out how much Mr. Lyons owed, made "routine" visits with Mr. Lyons, and visited him at his home on Christmas and Thanksgiving.

In 1984, claimant visited Mr. Lyons' residence with, and at the suggestion of, an agent from the Missouri Division of Aging, obtained a court ordered medical examination for Mr. Lyons, witnessed Mr. Lyons being handcuffed and transported in execution of the court order, and visited Mr. Lyons at the hospital. In the course of the examination it was determined that Mr. Lyons was suffering from frost-bite and that an operation was necessary to amputate his legs. Claimant described Mr. Lyons' house as having a terrible odor and being in a state of chaos.

Mr. Lyons was hospitalized from January to May of 1985 when he ultimately died. While Mr. Lyons was in the hospital, claimant arranged for the Jefferson County Animal Control to dispose of his pet dogs, had his mail forwarded to her, arranged for the filing of his income tax return, visited him in the hospital twice a week with visits varying from one to four or five hours and twice spending at least eight and possibly ten hours at the hospital.

Claimant testified that her services were worth the value of the house and that the house was worth between $21,000 and $25,000. The trial court sustained the objection to the admittance of this testimony. After an in chamber offer of proof claimant returned to the stand and testified the value of services to be $21,000.

Appellants first point is that the trial court erred by amending claimant's pleading on the court's own motion following the involuntary dismissal of claimants original petition for its failure to state a claim upon which relief could be granted.

A central question here is what rules of procedure apply. Pursuant to Section 472.141 RSMo 1986, adversary probate proceedings are to be governed by the civil code of Missouri and the rules of civil procedure except where there is an applicable probate statute.

Section 472.150 RSMo 1986, allows the judge to vacate, modify or rehear any judgment, order, or decree up to thirty days after the final order of distribution. Under this provision the trial judge was

within his power to reopen the case and modify the judgment. The trial court was also correct in allowing the claimant to amend her petition. If the trial court indicates in any way that a dismissal of the petition is not meant to be a dismissal of the plaintiff's action, the order does not dispose of the case and is not final. *Knight v. Keaton*, 660 S.W.2d 752, 753 (Mo.App.1983). Further, Rule 67.06 provides that "on sustaining a motion to dismiss a claim ... the court shall freely grant leave to amend and shall specify the time within which the amendment shall be made or amended pleading filed."

Having followed the correct procedure we find no error in the trial court's actions in allowing the pleadings amended.

Appellant's second argument is that the trial court erred by not declaring a mistrial when claimant testified the value of her services rendered to be the value of the real property which had previously been held by the trial court to be irrelevant and having no relationship to the claim.

Appellant claims that the admission of this testimony injected the false and misleading issue of an express contract to the jury and misdirected the jury as to the proper measure of damages to be awarded and irreparably prejudiced the jury.

■ We cannot agree. After the statement was made the jury was instructed to disregard the statement pertaining to the value of the house. When a witness unexpectedly volunteers an inadmissible statement, the action called for rests largely within the discretion of the trial court who must evaluate the situation and ascertain if some remedy short of mistrial will cure the error, the proper appellate review is to verify there has been no abuse of discretion. *Anderson v. Burlington Northern R. Co.*, 700 S.W.2d 469, 474 (Mo. App.1985). Declaration of mistrial is the most drastic remedy for trial error and it should be exercised only in those cases where the prejudicial error is so prejudicial that its effect can be excised in no other way. *Id.* There is nothing in this record to constitute reversible error.

Appellant argues that the trial court erred in failing to submit the estate's offered instruction based on MAI 32.15 in that the court ruled said instruction could not be given in the absence of an affirmatively pleaded defense of gratuitous furnishing of service.

■ Appellant did not have to plead an affirmative defense in this case. Rule 55.-01 provides that a defense consisting of an affirmative avoidance to any matter alleged in a preceding pleading must be pleaded. However, Rule 55 is not applicable in the present case. Both Rule 41.01(b) and Section 472.141 RSMo.1986, provide that Rule 55 is not applicable to civil actions originating in the probate division of the circuit court unless the court orders its application. The trial court did not order Rule 55 applicable in this case. Therefore, appellant was under no requirement to plead any affirmative defenses.

However, the trial court was correct in refusing to give the tendered instruction based on MAI 32.15 for other reasons.

Claimant's case was submitted to the jury by Instruction No. 5 which was as follows:

Your verdict must be for plaintiff is you believe:

First, Plaintiff furnished valuable services to William J. Lyons, and

Second, William J. Lyons accepted the benefits of such services, and

Third, the conduct and relationship of plaintiff and William J. Lyons was such as to imply an agreement that payment would be made for such services.

The refused instruction was as follows:

Your verdict must be for defendant if you believe that at the time the services were furnished to William Lyons plaintiff did not intend to make a charge for her services.

■ A threshold inquiry must be made to determine if there was any family relationship between the claimant and the deceased. By testimony of claimant, she and the deceased were second cousins. However, kinship actual or assumed is not nec-

essarily essential to the establishment of a family relationship. *Smith v. Estate of Sypret*, 421 S.W.2d 9, 15 (Mo.1967). In order to constitute a "family" there must be "(1) a social status, (2) there must be a head who has a right, at least in a limited way, to direct and control those gathered into the household, and (3) this head must be obligated either legally or morally to support the other members, and (4) there must be a corresponding state of at least partial dependence of the other members for this support." *Embry v. Estate of Martz*, 377 S.W.2d 367, 370 (Mo. 1964). None of these elements were shown by the record to exist. In addition, neither party pleaded nor proved a family relationship and the instruction based on MAI 32.15 is intended for conversing actions by strangers not those in a family relationship. We therefore find that no family relationship existed.

 When there is no family relationship, the intent to charge and agreement to pay are presumed. *Smith v. Estate of Sypret*, at 14. Further, a plaintiff need not show when he intended to be paid because once he shows services rendered by him to deceased and accepted by deceased the law implies the contract for compensation, and the burden is on the defendant to show that services rendered were gratuitous. *Smith v. Estate of Sypret* at 15; *Embry v. Estate of Martz, supra; Thomas v. Fitzgerald's Estate*, 297 S.W. 425, 428 (Mo. App.1927).

The tendered instruction is an alternative converse instruction. It is in the form of a hypothesized ultimate issue, which, if true, would defeat the plaintiff's claim. As an alternative converse instruction, the instruction must be supported by independent evidence. MAI 33.01.

Appellant has failed to meet their burden of proof in this matter. Appellant offered no evidence at trial. appellant did not call any witnesses. Neither on direct nor cross examination did claimant even remotely suggest that the services she rendered were gratuitous. Absent any independent evidence the refusal to give this instruction was correct.

Finally, appellants argue that the trial court erred by not directing a verdict for appellants because there was no showing of what claimant valued services to be and because the verdict was manifestly excessive, against the weight of the evidence and lacked substantial and credible evidence to support it.

 We find this argument to be without merit. The services proved to have been rendered by claimant, driving, personal care, errand running, etc., have been held to be of a nature, the reasonable value of which is within the common knowledge of the court and jury. *Smith v. Estate of Sypret* at 15. When the value of a particular kind of service is a matter within the common knowledge of the jury the showing of reasonable value is not necessary to sustain a claim in quantum meruit. *Strauser v. Estate of Strauser*, 573 S.W.2d 423, 424 (Mo.App.1978).

 Claimant in this case need not prove the existence of an implied contract. Once services have been rendered, the law presumes an intention on the part of the claimant to charge and the deceased to pay the reasonable value of the services rendered. *Embry v. Estate of Martz* at 368.

As to whether the jury's verdict was excessive, we must view the evidence in the light most favorable to the verdict disregarding evidence to the contrary. *McPherson v. Bi-State Development Agency*, 702 S.W.2d 129 (Mo.App.1985). An excessive verdict is one of such magnitude that it shocks the conscience of the court. *Eichelberger v. Barnes Hospital*, 655 S.W.2d 699 (Mo.App.1983).

 In this case claimant provided services to the deceased for which she was entitled payment. That amount was within the knowledge of the jury, *Smith v. Estate of Sypret* at 15. We find no reason in the record to hold that the jury's verdict was excessive.

Turning now to cross-appellant's argument, cross-appellant argues that the trial court erred in dismissing claimant's petition to reform deed because the court

should have ruled on the motion based on the standards of a motion for summary judgment, construing all allegations in a way most favorable to claimant, giving her all inferences and determining whether any material facts were in issue and only then find against her if the estate was entitled to judgment as a matter of law.

A court of equity has the ability to reform a deed where it is based upon mutual mistake of fact and does not express the intention of the parties. *Moreland v. State Farm & Casualty Co.*, 662 S.W.2d 556 (Mo.App.1983). However, it has been long established that equity will not reform a deed of gift. *White v. Reading,* 293 Mo. 347, 239 S.W. 90 (1922); *Mudd v. Dillon,* 166 Mo. 110, 65 S.W. 973 (1901); *Kemna v. Graver,* 630 S.W.2d 160 (Mo.App.1982).

Construing all allegations in a way most favorable to claimant, we can not find error in the trial court's dismissal of Count I.

The material issue in this count of the petition is whether the deed is a gift or one of mutual consideration. There is no allegation in the petition that the deed is not a gift. In fact the language of the petition points toward the finding of a gift. Paragraph 5 of the petition states "that Mr. Lyons engaged the services of said attorney for the purpose of providing for his use of the property during his life time and upon his death that the title therein would be conveyed to Winifred Ellinwood." There is no other allegation as to consideration to be given for the property or that the deceased did not intend this to be a gift.

Cross-appellant argues that language in the deed makes this a deed for mutual consideration. Cross-appellant states that the deed clearly states on its face "for and in consideration of a gift and other valuable consideration paid by said party." The language dealing with consideration is insufficient to overcome the intention of the parties demonstrated by insertion of the word gift in the deed and does not make the deed any less than a gift. *Clark v. Skinner,* 334 Mo. 1190, 70 S.W.2d 1094, 1097 (1934).

Cross-Appellant further argues that there were other material issues of fact presented by Count I of the petition. The issues of fact claimed to be present by cross-appellant go to Count II of the petition rather than Count I and do not have any bearing on that count.

The judgment of the trial court is affirmed.

CRANDALL and KAROHL, JJ., concur.