Josephine PEOPLES, Respondent,

v.

Robert C. HAMILTON, Personal Representative of the Estate of Julius L. Habermehl, Deceased, Appellant.

No. WD 39395.

Missouri Court of Appeals, Western District.

Jan. 26, 1988.

Motion for Rehearing and to Transfer to Supreme Court Denied March 1, 1988.

Application to Transfer Denied April 19, 1988.

David W. Whipple, Kansas City, for appellant.

W. Stephen Nixon, Independence, for respondent.

Before LOWENSTEIN, P.J., and CLARK and COVINGTON, JJ.

LOWENSTEIN, Judge.

This case involves a claim for services against an estate. A bench trial resulted in an award of $95,000 to the claimant Josephine Peoples for services rendered to the decedent of the personal representative. Those services were for nursing, housework, cooking and washing and cleaning from September, 1977 until July 31, 1985.

Peoples met the decedent Habermehl, a widower, at a VFW party in 1977. She moved into his residence and acted as cook and housekeeper until his death in July of 1985. During that period he was in various stages of poor health and at various times hospitalized. He was incapacitated for broken ribs and then with a brain tumor and lung cancer. In the spring of 1982 he became physically unable to return to his job. She testified they slept in separate bedrooms and had no sexual relationship. The two did take several trips together and attended social functions together.

Longtime friends and neighbors of Habermehl all appeared on behalf of respondent. The only witnesses for the appellant were the personal representative himself and a person to evaluate the value of services Peoples performed. They testified Habermehl referred to and treated her as his housekeeper and nurse or as someone taking care of him. They observed her

tend to his medical needs and keep his house clean. The several witnesses told of her cutting the grass, continually cleaning up the carpet after his dog, cooking all his meals, running his errands and doing all the housework. None saw or knew of Peoples and Habermehl sleeping together, or even showing any affection toward each other. Peoples received no compensation. Habermehl made her the beneficiary on two contracts of life insurance totalling some $24,000. She testified as to being promised something in Habermehl's will. A friend of Habermehl's for 28 years took the stand and said the decedent had told him in both 1983 and 1984 of Habermehl's intent to take financial care of Peoples if she stayed with and continued to take care of him. No evidence was presented as to joint bank accounts or joint ownership of property. The witness who took the fishing and other trips with Peoples and Habermehl testified Peoples did the cooking, cleaning and packing and the loading of the boat. All these witnesses were extensively cross-examined by the personal representative's attorney as to their testimony as to sleeping arrangements, show of affection, extent of duties, and the nature of Habermehl's expectation to pay and Peoples expectation to receive something in a will or trust for services.

The personal representative's primary point on appeal is Peoples and Habermehl lived in a "family relationship," and she did not present evidence of any agreement she was to be compensated for her services.

■ A threshold inquiry must be made as to whether a "family relationship" existed between the claimant and the deceased. If such a relationship is shown by the estate there is a presumption the person in a family relationship performed the services without expectation of repayment. *Ellinwood v. Estate of Lyons*, 731 S.W.2d 23, 26 (Mo.App.1987). To constitute a family there must be present the following four elements:

(1) a social status, (2) there must be a head who has a right, at least in a limited way, to direct and control those gathered into the household, and (3) this head must be obligated either legally or morally to support the other members, and (4) there must be a corresponding state of at least partial dependence of the other members for this support.

*Ellinwood, supra,* at 27.

The trial judge in the case at bar did not find a family relationship and found claimant did not render the services *gratis*, and that the decedent intended to pay the claimant for her services. Peoples and Habermehl were not related, and not married. The court found her services were valuable, and performed continuously over a period of 411 weeks, much of the time which he was in poor health.

■ Once a claimant establishes services of the character and kind performed, the estate bears the burden of showing they were performed gratuitously. *Morris v. Retz*, 413 S.W.2d 544, 548–49 (Mo.App. 1967). When the elements of a family relationship are not proved by the estate there is a presumption of an agreement for compensation and the burden is on the estate to show the services were gratuitous. *Buchweiser v. Estate of Laberer*, 695 S.W.2d 125, 128 (Mo. banc 1985), *Ellinwood, supra,* at 27.

■ The trial judge was correct in finding the appellant failed to establish a family relationship. As in *Morris v. Retz, supra,* there was a total absence of evidence of the all important third element, that is of any obligation of Habermehl to support Peoples. 413 S.W.2d at 550. The first point is denied.

■ In his other point the personal representative claims, "the amount of $95,000 awarded to claimant is unreasonable." The respondent offered the testimony of an expert witness who was employed by home health care provider. The witness testified the respondent would have received a net of $106,360 for the eight years of service. The personal representative presented an expert who testified it was common for elderly in Kansas City to "swap" these type of services for room and board.

As the trier of fact, the trial judge was free to believe all, part or none of the

testimony of a witness and on appeal due regard is given to the opportunity of the court to assess witness credibility. *Osborne v. Boatmen's National Bank of Springfield,* 732 S.W.2d 242, 245 (Mo.App. 1987). The claimant provided services to Habermehl for which she was entitled to payment, the amount of which was within the knowledge of the trier. *Ellinwood, supra.* The judgment was within the range of the evidence and will not be disturbed. *Oldham's Farm Sausage Co. v. Salco, Inc.,* 633 S.W.2d 177, 184 (Mo.App. 1982).

The estate bore the burden of showing a family relationship, *Ellinwood, supra,* and the burden of showing the services were gratitious, *Buchweiser, supra.* The evidence here did not support a favorable conclusion to the estate.

The judgment is affirmed.

CLARK, Judge, dissenting.

The majority opinion affirms the judgment by the trial court on the ground that no evidence was presented to show the existence of a family relationship between the decedent and the claimant and, in consequence, there was no burden on the claimant to prove any agreement for compensation in support of her claim. This conclusion overlooks and is in conflict with a line of Missouri cases denying compensation to claimants under fact situations virtually identical to the present case. On this account, I respectfully dissent from the majority opinion.

The facts applicable to the decisive issue in the case were uncontroverted and were established by the claimant's evidence. Such facts are binding on the claimant and create an issue of law, that is, on the evidence presented, is the claimant here entitled to the benefit of the presumption that her services were rendered under an implied agreement that she be compensated. The principle of deference to the judgment of the trial court on questions of credibility, referred to in the majority opinion, is therefore inapplicable.

Summarized, the evidence showed that the deceased, a widower, first met the claimant at a social function early in 1977. At the time, the deceased was employed at the Ford Motor Company, a position from which he retired in 1982. After making claimant's acquaintance, the deceased called on claimant at her son's home where she was then living. He took the claimant out to dinner a number of times and in August, 1977, he persuaded her to move to his home. From then until the date of decedent's death, the claimant lived with the deceased, but with each occupying separate bedrooms. The claimant did all of the housekeeping, prepared the meals and attended to the deceased during his various illnesses which became more serious after he retired from his employment. In 1983, the claimant had open heart surgery and the deceased attended to her during her recuperation.

All of the expenses of maintaining the household were paid by the decedent. He and the claimant engaged in social activities as a couple, they went out to dinner together, visited friends and relatives, went on fishing trips and out-of-town to horse races in Omaha. They referred to each other by their first names.

From time to time, the deceased indicated that he appreciated the care and services the claimant provided to him and that he would "make it right" with her. The deceased made no provision for the claimant in his will executed on June 22, 1983, but he did name the claimant as beneficiary of his life insurance. From that source, the claimant collected $24,501.00. The residue of claimant's estate was bequeathed to the Shriner's Hospital Burn Institute and the Shriner's Hospital for Crippled Children. Other bequests were to sisters of his deceased wife, a $2,000.00 gift to a friend and $1,000.00 bequest to a Masonic Lodge.

Claim was filed against the estate by Josephine Peoples, the claimant, in the amount of $95,000.00 represented to be the value of household services and care rendered to the decedent during the time the claimant and decedent lived in the decedent's home, a period of approximately eight years. It was undisputed that no express agreement was ever made by the

deceased for payment of compensation to the claimant. On these facts, the trial court allowed the claim in full.

It has long been the law in Missouri that where two persons live together in the same household concurrently rendering services to each other, and each accepting services from the other, in the absence of an express contract that payment is to be made in addition to the benefit derived from the arrangement under which they are living, it is presumed such mutual benefit is full recompense to each for the services rendered and that neither intended to charge or to accept pay for the services. *Manning v. Driscoll's Estate*, 174 S.W.2d 921, 924 (Mo.App.1943), *Brunnert v. Boeckmann's Estate*, 226 Mo.App. 494, 499, 258 S.W. 768, 770 (1924).

The principle stated above was most recently applied to disallow a claim for housekeeping services in *Estate of Erickson*, 722 S.W.2d 330 (Mo.App.1986), decided by this court, a case involving facts remarkably similar to the present case. In *Erickson*, the deceased and Marguerite Renyer, the claimant, commenced living together some five months after they became acquainted in March, 1976. The relationship continued, with two interruptions, for a period of eight years. Renyer filed claims against the estate, including one for compensation for domestic services of cooking, laundering, ironing, housecleaning, clothes mending, mowing, trimming, snow shoveling, errand running and car washing. The trial court allowed the claim, and an associated claim for wages Renyer contended were due for work performed in the decedent's business. The opinion reversed the judgment to the extent Renyer's claim was based on domestic or household services.

In its opinion in *Erickson*, this court cited, in addition to *Manning v. Driscoll's Estate, supra, McDaniel v. McDaniel*, 305 S.W.2d 461, 464 (Mo. banc 1957), where it is stated that if a family relationship exists between a person rendering services and the recipient, it is presumed the services are rendered gratuitously and the party claiming compensation must prove an express contract for payment before a claim

may be allowed. The key phrase is "family relationship" which the court found to have existed between Renyer and the deceased.

The only significant difference between *Erickson* and the subject case is that in *Erickson*, there was evidence of sexual relations between the claimant and the deceased. In the present case the evidence was that claimant and the deceased occupied separate bedrooms. The majority opinion appears to hold that no family relationship between the claimant and the deceased existed because that status occurs, not only where there is proof of marital relations, but where the parties are related by marriage. This is not a correct statement of the law.

The case of *Wells v. Goff*, 361 Mo. 1188, 239 S.W.2d 301 (1951), was, again, a claim by a female companion of the deceased who lived with the deceased for a number of years. There was proof of neither illegal nor immoral cohabitation and no marital relation. According to the court's opinion, "[t]here does not seem to have been that tender affection usually obvious between those living in a family relationship but there was a type of loyalty, regard, mutual respect and devotion not usually observed between those in a strictly business relationship." *Wells*, 361 Mo. at 1192; 239 S.W.2d at 303. The court went on to state that even though the deceased and the claimant may not have lived together as husband and wife, they certainly lived together as members of one family in a "family relation." On this account, the court held the services for which claim was made to have been presumptively gratuitous and because no proof of an express contract to compensate was made, the judgment allowing the claim was reversed. Cited, among other cases, was *Manning v. Driscoll's Estate, supra.*

The same result was reached in *Johnston v. Estate of Phillips*, 706 S.W.2d 554 (Mo.App.1986), a recent case from the southern district of this court. There, the claim was by an unmarried cohabitant who lived with the deceased four or five years prior to his death at age 75. The couple made trips together, lived in the same

house and entertained friends. The claimant did the yard work, cooked, washed and kept house. The deceased paid the household expenses. The trial court disallowed the claim but made no findings of fact.

The appellate court affirmed the judgment for the estate on the basis that a family relationship existed between the deceased and the claimant and, citing *McDaniel v. McDaniel, supra,* ruled that the claimant could not prevail without proving an express contract for payment. The opinion also cited *Morone v. Morone,* 50 N.Y.2d 481, 429 N.Y.S.2d 592; 413 N.E.2d 1154 (1980), for the observation that as a matter of human experience, personal services will frequently be rendered by two people living together because they find it a convenient or rewarding thing to do and courts should not attempt to sort out the intention of the parties to convert the arrangement into a business transaction.

In the present case, the deceased and Josephine obviously found the arrangement of mutual support convenient and beneficial without any other agreement for compensation to Josephine beyond her enjoyment of a good home, financial support and companionship. The claim against the estate was an afterthought not related to any liability expressly assumed by the decedent beyond the indefinite expression that he would see that she was taken care of in some manner. That assurance was fulfilled by the designation of claimant as the beneficiary of substantial life insurance proceeds.

The facts of the case demonstrate that the deceased and Josephine enjoyed a family relationship, within the definition of the terms as announced in the cited cases, and, on this account, the trial court should have denied the claim in the absence of proof of an express contract. The estate was entitled to the presumption, which Josephine did not rebut, that the domestic services performed were rendered gratuitously. In holding otherwise, the majority opinion is in direct and irreconcilable conflict with *Estate of Erickson, supra; Johnston v. Estate of Phillips, supra; Wells v. Goff, supra;* and the doctrine of family relation-

ship stated in the other cases cited above. On this account, I dissent and would reverse the judgment and remand the case for entry of judgment denying the claim.